**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CHRISTOPHER KOMONDY (substituted plaintiff),<br><br>Plaintiff,<br><br>v.<br><br>MARIO GIOCO, JUDITH BROWN, and ZONING BOARD OF APPEALS, TOWN OF CHESTER,<br><br>Defendants. | No. 3:12 - CV - 250 (CSH)<br><br>**NOVEMBER 18, 2014** |

**RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**HAIGHT, Senior District Judge**:

## I. BACKGROUND

Marguerite Komondy, now deceased, commenced this action against the Town of Chester and its zoning officials to redress their alleged infringement of her federal and state constitutional rights with respect to residential property she owned at 29 Liberty Street in Chester, Connecticut. Her spouse, Christopher Komondy, now executor of her estate, has been substituted as Plaintiff in this action. *See* Doc. 50 (Second Amended Complaint). At all relevant times, defendant Mario Gioco has held the position of Chairman of the Town of Chester Zoning Board of Appeals ("Chester ZBA") and defendant Judith Brown has been an Enforcement Officer employed by the Town of Chester. *Id.*, ¶¶ 4-5. Defendant Town of Chester is a municipality within the State of Connecticut. *Id.*, ¶ 6.

On March 5, 2005, Marguerite Komondy's antique historical home at 29 Liberty Street was destroyed by fire. *Id.*, ¶ 9. Because the structural damage from the fire was so extensive, the "remainder of [the] dwelling was demolished in the interest of safety." *Id.* Mrs. Komondy thereafter sought permission from the Town of Chester, pursuant to Chester Zoning Regulation § 113B.5, to remain on her property in a temporary mobile home during the reconstruction of her permanent home. *Id.,* ¶ 10. On March 14, 2005, she received a permit to install a mobile home on the property and to live in that "temporary dwelling" for a maximum period of six months. *Id.*, ¶¶ 10-11. Upon expiration of the six-month period, Mrs. Komondy applied for an extension of the permit from Zoning Enforcement Officer Judith Brown. The extension, however, was denied on August 25, 2006. *Id.*, ¶ 13.

Mrs. Komondy thereafter filed an appeal of the permit denial and an application for a variance from § 113B.5, but the Chester ZBA denied both applications on December 18, 2006. *Id.,* ¶ 14. She then filed appeals of the Chester ZBA decision in the Connecticut Superior Court, Judicial District of Middletown, and subsequently in the Connecticut Appellate Court. *Id.*, ¶ 15. *See Komondy v. Zoning Bd. of Appeals of Town of Chester*, Case No. MMX-CV07-4006628-S (Conn. Super. Ct. Jan. 19, 2007); *Komondy v. Zoning Bd. of Appeals of Town of Chester*, 127 Conn. App. 669 (2011). Mr. Komondy, the substituted Plaintiff, concedes that "[w]hether the Chester town regulation, § 113B.5 was constitutional as applied to [Mrs. Komondy] was not raised or considered" in those state court proceedings.[1] Doc. 50, ¶ 16. Mrs. Komondy's appeals were ultimately

[1] Plaintiff Christopher Komondy contends, through counsel, that the issue of whether Chester Zoning Regulation § 113B.5 was constitutional could not have been considered by the state superior or appellate courts. Doc. 50, ¶ 16 (citing *Ross v. New Canaan Envtl. Comm'n*, 433 F. App'x 7 (2d Cir. 2011). The *Ross* case, however, focused on "claim preclusion," *i.e.*, whether a state court judgment had a preclusive effect on a subsequent federal action, under the Full Faith and Credit Act.

dismissed on April 5, 2011. *Id. See also Komondy*, 127 Conn. A 2pp. at 690 (" it remains that the court determined that no unusual hardship existed to warrant a variance from § 113B.5 of the regulations" and "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance.") (citations and internal quotation marks omitted).

On February 2, 2012, Mrs. Komondy received a letter from Chester' s legal counsel, informing her that the Town would "remov[e] the trailer on [her] property . . . if it [was] not removed by [her]" and "the costs and expenses of that removal would be charged against [her], resulting in a lien on the subject real property." Doc. 50, ¶ 23. Two weeks later, Town representatives and contractors entered the property at 29 Liberty Street to inspect the trailer and evaluate disconnection of utilities in preparation to remove the trailer. *Id.*, ¶ 24. Mrs. Komondy, who was then residing in the trailer with her spouse Christopher Komondy, was seventy-nine years old, suffering from "stage 4 cancer," and undergoing "weekly chemotherapy sessions." *See* Doc. 1 (original Complaint), ¶ 23.

Mrs. Komondy commenced this action in the District of Connecticut on February 20, 2012. Doc. 1. In her original Complaint, she maintained that Chester's Zoning Regulation, § 113B.5, barring her from remaining in a temporary mobile home on her property during re-construction of her home, was "unconstitutional," "unreasonable," and "confiscatory" as applied to her. Doc. 1, ¶¶ 17-18. She also specifically alleged that "defendant Judith Brown and [the] Town of Chester have attempted to deprive [her] of all 'economically viable use' of [her] property and therefore effected

---

The Second Circuit held that "the Superior Court's denial of plaintiff's administrative appeal d[id] not have a claim preclusive effect on plaintiff's subsequent filing in the district court of a complaint seeking compensation for alleged constitutional violations." *Ross*, 433 F. App'x at 9.

a 'taking' under the Fifth and Fourteenth Amendments" of the United States Constitution. *Id.*,¶ 25. Two days after filing her Complaint, she sought a preliminary injunction to prevent the Town from removing her mobile home from the premises of 29 Liberty Street. Doc. 3. She subsequently withdrew the motion after Chester's counsel represented that the Town agreed not to take any action to remove her mobile home during the pendency of this action. Doc. 14. On June 4, 2013, Marguerite Komondy died. Doc. 35 ("Suggestion of Death").

On January 29, 2013, the Court granted an "Amended Motion to Substitute Plaintiff," filed on behalf of Christopher Komondy as the surviving spouse of the deceased Marguerite Komondy. Doc. 48. On February 6, 2014, Christopher Komondy filed an amended complaint [Doc. 50], once again seeking recovery from the prior named Defendants for violation of his wife's federal and state constitutional rights with respect to the property at 29 Liberty Street in Chester. In that "Second Amended Complaint," he also alleges that Chester's zoning regulation, § 113B.5, as applied to 29 Liberty Street, was an attempt "to deprive plaintiff of all 'economically viable use' of said property and therefore effected a 'taking' [without just compensation] under the Fifth and Fourteenth Amendments." Doc. 50, ¶ 28.

Pending before the Court is Defendants' Motion for Judgment on the Pleadings, asserting that "Plaintiff's federal taking[s] claim in his operative complaint should be dismissed" because it "is not ripe for adjudication and, as a result, this Court lacks subject matter jurisdiction over the claim." Doc. 51, p. 1.

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule 12(c) of Civil Procedure, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." In deciding a

motion for judgment on the pleadings, a district court must "employ[ ] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (*per curiam*)). *See also DeMuria v. Hawkes*, 328 F.3d 704, 706 n. 1 (2d Cir.2003) ("[T]he legal standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable."). The Court must therefore "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiffs'] favor." *Hayden*, 594 F.3d at 160. "To survive a Rule 12(c) motion [for judgment on the pleadings], [a plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In considering a motion under either Rule 12(b)(6) or 12(c), the court employs a "two-pronged approach" to evaluate the complaint's sufficiency. *Hayden*, 594 F.3d at 161. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Then "[a]t the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 559 U.S. at 679). In that regard, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 678 and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

Furthermore, “[i]t is axiomatic that a lack of subject matter jurisdiction may be raised at any

time," and by any interested party. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000). In general, a motion to dismiss for lack of subject matter jurisdiction is raised pursuant to Rule 12(b)(1), Fed. R. Civ. P. *See, e.g., Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 375 n.2 (S.D.N.Y. 2000). However, dismissal for lack of subject matter jurisdiction may also be asserted pursuant to Rule 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). *See, e.g., Mulligan v. American Inst. of Certified Pub. Accountants Ins. Trust*, No. 3:99 - CV - 1407 (AWT), 2001 WL 777437, at *1 (D.Conn. June 26, 2001); *United States v. New Silvar Palace Restaurant, Inc.*, 810 F.Supp. 440, 441 (E.D.N.Y.1992). *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (1990) ("[I]f a party raises an issue of subject matter jurisdiction on his motion for a judgment on the pleadings, the court will treat the motion as if it had been brought under Rule 12(b)(1).").

"When considering a motion to dismiss for lack of subject matter jurisdiction . . . the court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drako*, 140 F.3d 129, 131 (2d Cir.1998) (citation omitted). "But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). *See also Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir.1996) (on motion to dismiss for lack of subject matter jurisdiction, the "[p]laintiff, who is seeking to invoke the subject matter jurisdiction of the district court, bears the burden of showing that he [is] properly before that court.").

In deciding either a Rule 12(b)(6) or 12(c) motion, the Court does not consider materials outside of the pleadings; otherwise the motion must "be treated as one for summary judgment under

Rule 56"). *See* Fed. R. Civ. P. 12(d). *See also Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004) ("A district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material outside the pleadings and that material is not excluded by the court.") (citation and internal quotation marks omitted). Nonetheless, the court may consider matters of which it is permitted to take judicial notice without converting a Rule 12 motion to a Rule 56 motion for summary judgment. *See, e.g., Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (*per curiam*) ("Because this matter comes to us on appeal from a judgment on the pleadings, we rely on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").

## III. DISCUSSION

### A. Defendants' Motion for Judgment on the Pleadings – Unripe Claim

The Defendants argue that the Court lacks subject matter jurisdiction over the federal takings claim in the Amended Complaint [Doc. 50] because the claim is not ripe. Ripeness of a claim implicates the Court's subject matter jurisdiction. Accordingly, the Court is obligated to consider "ripeness" as a threshold issue. *See, e.g., Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry."). *See also Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 89 (2d Cir. 2002) ("[t]he purpose of the ripeness requirement is to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution").

As the Second Circuit noted in *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013):

> To be justiciable, a cause of action must be ripe—it must present a real, substantial

> controversy, not a mere hypothetical question. Ripeness is peculiarly a question of timing. A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.

(Citations and internal quotation marks omitted).

The doctrine of "ripeness" is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Org. for Marriage*, 714 F.3d at 687 (citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)) (internal quotation marks omitted). Ripeness thus "implicates two distinct conceptual jurisdictional criteria." *Nat'l Org. for Marriage*, 714 F.3d at 687 (citing *Simmonds v. INS*, 326 F.3d 351, 356–57 (2d Cir.2003)). The first ripeness requirement "has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction." *Nat'l Organization for Marriage*, 714 F.3d at 687. The second form of "ripeness" is a "more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." *Id.* at 687-88.

Regarding jurisdiction, "federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, __U.S. __, 134 S.Ct. 1377 (2014)). Ripeness is thus a doctrine that derives from Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). *See also Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999) ("For a case to be deemed justiciable under Article III, it

must be ripe. Indeed, ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts.") (citations and internal quotations marks omitted), *cert. denied*, 528 U.S. 869 (1999).

In their present Motion, Defendants assert in effect that Plaintiff's federal "takings" claim is not ripe for adjudication. That is the thrust of Defendants' request that the Court determine "whether [it] should defer until such time as the claim[ ] ha[s] matured into a more appropriate form." Doc. 51-1, p. 7. Under the cited cases, the Court must address this question at the outset.

In addition, Defendants correctly maintain that it is the Plaintiff's burden to demonstrate by a preponderance of the evidence that subject matter jurisdiction exists. *Id.*, p. 8.

## B. Plaintiff's "Takings Clause" Claim under the Fifth Amendment

In the case at bar, Plaintiff Christopher Komondy asserts that Defendants' conduct in failing to allow Marguerite Komondy to remain in a temporary dwelling on her property while her home was rebuilt constituted an unlawful taking under the Fifth Amendment and Fourteenth Amendments.[2] "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted). The Takings Clause, which applies to instances when the government encroaches on or occupies land, *Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419, 427 (1982), also encompasses regulations that, absent encroachment or occupation, simply go "too far," *Palazzolo*, 533 U.S. at 617. Such regulations may limit the use of property "to such an extent that a taking occurs." *Id.*

Defendants herein argue that Plaintiff's "takings" claim before this Court is "not ripe for

---

[2] *See* Doc. 50 ("Second Amended Complaint"), ¶¶ 17-18, 22, 28.

adjudication and, therefore, must be dismissed." Doc. 51-1, p. 8-9. In particular, Defendants cite *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), emphasizing that "[t]he United States Supreme Court has developed specific ripeness requirements applicable to takings claims in the land use context." Doc. 51-1, p. 9.

Defendants correctly acknowledge that *Williamson* articulated a two-pronged test to assess whether a federal "takings" claim with respect to zoning regulations is actually ripe. First, the court must determine whether the government entity charged with enforcing the regulations has rendered "a final decision;" and second, the court must assess whether the plaintiff has sought just compensation in state court if the state provides a "reasonable, certain and adequate provision for obtaining compensation." 473 U.S. at 190, 194 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-25 (1974)).

Focusing on the second prong, the Supreme Court in *Williamson* explained:

> A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking. . . . [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 194-95 (citations and internal quotation marks omitted). In sum, the Supreme Court recognized that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." *Id.* at 195. "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for

obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.* *See also Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 512-13 (2d Cir. 2014) ("a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State") (citation and internal quotation marks omitted).

This District has applied the binding ruling of *Williamson* to dismiss "takings" claims as unripe when the second prong of ripeness has not been met – that is, if the plaintiff's claim is based on a regulatory taking and the plaintiff has failed to utilize available state procedures to procure just compensation for that taking. *See, e.g., Gavlak v. Town of Somers*, 267 F.Supp. 2d 214, 220 (D.Conn. 2003) ("Under the second prong, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation. Further, if no procedures exist as a means for obtaining just compensation, then it is up to the plaintiff to plead that such remedy did not exist.") (citations, internal quotation marks and brackets omitted); *Smolicz v. Borough/Town of Naugatuck*, No. 3:04–CV–00855 (WWE), 2006 WL 2085291, at *6 (D.Conn. July 25, 2006) ("Plaintiff's claim of a Fifth Amendment violation is not ripe for this Court's adjudication. . . . [B]efore a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a reasonable, certain and adequate provision for obtaining compensation.") (citations and internal quotation marks omitted), *aff'd,* 281 F.App'x 32 (2d Cir. 2008). *Accord New Holland Vill. Condominium v. DeStaso Enterprises Ltd.*, 139 F.Supp. 2d 499, 504 (S.D.N.Y. 2001) ("to withstand a motion to dismiss, an aggrieved plaintiff must allege, not only a taking, but that compensation was sought via state procedures and was denied") (citing *Williamson*, 473 U.S. 172),

*aff'd*, 29 F. App'x 760 (2d Cir. 2002).

With respect to Connecticut law, the Second Circuit, and hence this District, have explicitly approved Connecticut's constitutional procedure for property owners to obtain just compensation for a taking. "[T]he Connecticut Constitution provides what the Second Circuit describes as 'a straightforward takings clause' upon which to base a prayer for compensation." *Gavlak*, 267 F. Supp. 2d at 220 (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996)).[3] Article I, section 11 of the Connecticut Constitution specifically states, "The property of no person shall be taken for public use, without just compensation therefor." The Second Circuit has recognized that "[t]his clause may be used as the basis of an inverse condemnation action to recover compensation for property taken from private individuals, even in the absence of a separate statutory remedy." *Villager Pond*, 56 F.3d at 380 (citing *Laurel, Inc. v. State*, 169 Conn. 195, 200, 362 A.2d 1383 (1975)). Therefore, "[s]o long as a remedy potentially is available under the state constitution's provision, [the plaintiff] has not yet met the preconditions for a valid takings claim." *Villager Pond*, 56 F.3d at 380. *See also Katz v. Stannard Beach Ass'n*, 95 F.Supp.2d 90, 97-98 (D.Conn.2000) (given Plaintiffs' failure to pursue the available state procedures under "article first, § 11, of the constitution of Connecticut" to obtain just compensation for the alleged taking of their property, their "taking claim under the Fifth Amendment of the United States Constitution [was] premature, unripe for judicial review" and had to "be dismissed").

In the case at bar, Plaintiff has failed to plead that he has unsuccessfully utilized Connecticut's state procedure for procuring just compensation for the alleged taking of the property

---

[3] In *Gavlak*, the district court explained that in *Villager Pond*, the Second Circuit held that "even if a specific claim for compensation has yet to be presented to the courts, the plaintiff must still look to the state for compensation before a takings claim will lie." 267 F.Supp.2d at 220.

at 29 Liberty Street. Rather, he has admitted in the currently operative complaint that the constitutionality of the relevant zoning regulation was not raised in state court. *See* Doc. 50 (Second Amended Complaint), ¶ 16.

Plaintiff's sole stated ground for opposition to Defendants' motion for judgment on the pleadings is that the motion is effectively "moot." Doc. 57, p. 1. Plaintiff declares that "Christopher Komondy, as the substituted plaintiff, asserts "an independent civil action" based upon his deceased wife, Marguerite's constitutional claims" and "seeks legal remedy within the instant action." *Id.* Furthermore, "[b]ased upon the defendants' prior stipulations [*i.e.*, "to stay the eviction (the taking) during the pendency of this lawsuit"], the present motion is moot." *Id.*, p. 1-2. In other words, because the Defendants will not act to physically remove the mobile home from 29 Liberty Street while the action remains pending, Plaintiff essentially contends that the issue of ripeness is moot. *Id.*, at p. 3.

With respect to filing an "independent civil action" in federal court, Plaintiff has failed to fulfill the requirement that he first seek compensation for the alleged "taking" by bringing an action under Connecticut's Constitution in state court. He, in fact, has conceded that he has brought no such constitutional claim in his Second Amended Complaint. Doc. 50, ¶ 16.

Furthermore, as to Plaintiff's assertion that there has been no physical "taking" due to the Defendants' stipulation, Plaintiff's argument misses the mark. The fact that the alleged "taking" at issue has been regulatory, as opposed to physical, does not bear on the ripeness of the claim. In both varieties of "takings" claims, the property owner must seek just compensation in state court before the claim is ripe for decision in federal court. As the Second Circuit clarified in *Villager Pond,* 56 F.3d at 380:

> *Williamson* drew no distinction between physical and regulatory takings, and the rationale of that case, that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State," 473 U.S. at 195, demonstrates that any such distinction would be unjustified. Thus, regardless of whether Villager Pond's claim alleges a physical or regulatory taking, the claim is not yet ripe for review.

56 F.3d at 380 (lateral citation omitted). *See also Silva v. Town of Monroe*, No. CIV. 3:07-CV-1246 (VLB), 2010 WL 582611, at *12 (D. Conn. Feb. 16, 2010) ("it is irrelevant for the purposes of *Williamson* whether a taking is classified as regulatory or physical; both varieties of a takings claim require the property owner to seek compensation in state court before the claim is considered to be ripe for decision in federal court") (footnote omitted).[4]

Based on *Williamson* and *Villager Pond*, the absence of a physical "taking" of the property at 29 Liberty Street does not render the ripeness of Plaintiff's "takings" claim moot. Whether regulatory or physical in nature, a "takings" claim for just compensation must be pursued in state court before it becomes ripe for federal adjudication.

Lastly, assuming *arguendo* that Defendants' agreement to stay eviction while this action remains pending were to somehow "waive" the ripeness issue, the issue of ripeness would not be moot. The Court would continue to lack subject matter jurisdiction over the "takings" claim because subject matter jurisdiction cannot be conferred on a court by agreement, consent or otherwise. *See*

---

[4] Furthermore, as Defendants point out, Plaintiff has allegedly already suffered damages despite the lack of a physical "taking":

> Plaintiff alleges that the existence and maintenance of the ordinance in effect constitutes a present invasion of the plaintiff's property rights. The situation giving rise to the Complaint remains in existence today, *i.e.*, the Connecticut Superior and Appellate Courts have dismissed Mrs. Komondy's appeal of her variance decision.

Doc. 58 (Defendants' Reply Memorandum), p. 1-2 (citations omitted).

*Am. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 18 n. 17 (1951) ("It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case.") (citation and internal quotation marks omitted). *See also In re Stable Mews Assocs.*, 778 F.2d 121, 125 (2d Cir.1985) ("Even the express agreement of all parties, however, cannot confer subject matter jurisdiction where it does not exist."); *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) ("[s]ubject matter jurisdiction cannot be waived"); *Calzaturificio Giuseppe Garbuio S.A.S. v. Dartmouth Outdoor Sports, Inc.*, 435 F. Supp. 1209, 1211 (S.D.N.Y. 1977)("[I]t is fundamental that subject matter jurisdiction cannot be conferred by agreement of the parties.").

**C. Plaintiff's Other Claims**

Plaintiff has included no headings in his Second Amended Complaint to suggest that he has brought multiple counts or causes of action before this Court. However, in addition to language supporting a Fifth Amendment "takings" claim and/or a substantive due process claim, based on a regulatory taking, Plaintiff has included language in his Second Amended Complaint to suggest that he may seek recovery under the theories of (1) "class of one" equal protection (that the Town treated similarly situated individuals differently) and/or (2) section 1983 (unlawful deprivation of a constitutional right taken "under color of" state action).[5]

---

[5] For example, Plaintiff alleges that Marguerite Komondy was treated "differently from at least two other identically situated property owners in the Town of Chester" and was thus "deprived . . . of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code." Doc. 50, ¶ 22. Plaintiff also asserts that "Section 113B. 5 violates the plaintiff's constitutional protection to the right of property under the guise of the municipality's police power," which is "unreasonable and confiscatory as applied to this plaintiff." *Id.*, ¶ 18.

To the extent that Plaintiff seeks recovery under the "class of one" equal protection theory, he must allege, and ultimately prove, that Defendants intentionally treated Marguerite Komondy differently from others similarly situated and no rational basis existed for said difference in her treatment. *See, e.g., African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362–63 (2d Cir. 2002).

With respect to a § 1983 claim, in order to sustain such an action directly against a municipality, such as Chester, Plaintiff must plead and prove that the municipality inflicted a constitutional deprivation "upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). Moreover, a municipality "may not be held liable for the actions of its employees or agents under a theory of *respondeat superior*." *Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 691, 694).

In any event, Defendants have not moved to dismiss any other potential claim in their motion for judgment on the pleadings; and have focused solely on the ripeness of Plaintiff's federal "takings" claim based on a regulatory taking without just compensation. Absent a clear delineation of pending claims and/or a motion seeking dismissal thereof, the Court will dismiss only the Plaintiff's federal "takings" claim on ripeness grounds.[6]

---

[6] As District Judge Goettel noted in *Gavlak v. Town of Somers*, there are two kinds of substantive due process claims: "one alleging an unconstitutional regulatory taking without just compensation and another alleging that a zoning board's decisions were arbitrary and capricious." 267 F. Supp. 2d at 220 (citing *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir.1992), *cert. denied*, 507 U.S. 987 (1993)). The "unconstitutional regulatory taking" claim is subject to both prongs of the *Williamson* ripeness test – "final decision" of the government regulatory entity and denial of just compensation after utilizing an adequate state procedure. *Gavlak*, 267 F.Supp. 2d at 219-20. However, "the separate and distinct substantive due process claim of arbitrary and capricious or illegitimate and irrational decisions on the part of a zoning board is subject only to the

## IV. CONCLUSION

Applying the relevant standard regarding Rule 12(c), Fed. R. Civ. P., for judgment on the pleadings, this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the Plaintiff's favor. Plaintiff has failed to plead any facts upon which this Court could infer that he unsuccessfully utilized Connecticut's available state procedures, under Article I, section 11 of the Connecticut Constitution, to procure just compensation for the alleged taking of 29 Liberty Street in Chester, Connecticut. *See, e.g., Gavlak*, 267 F. Supp. 2d at 220. Therefore, Plaintiff's federal "takings" claim under the Fifth Amendment is not ripe for adjudication pursuant to the standards set forth in *Williamson* and its progeny. With respect to this unripe claim, the Court lacks subject matter jurisdiction, which "remains an unwaivable *sine qua non* for the exercise of federal judicial power," *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 321 (2d Cir. 2001) (citation and internal quotation marks omitted). In sum, Plaintiff has failed to meet the burden necessary to prove to the Court that it has subject matter jurisdiction over his takings claim.

Accordingly, the Court dismisses Plaintiff's "takings" claim as unripe for adjudication. Plaintiff may, if so advised, seek just compensation for the alleged taking under Connecticut's Constitution in state court.[7] Defendants' Motion for Judgment on the Pleadings [Doc. 51] is GRANTED and the Clerk is directed to enter judgment for Defendants on Plaintiff's federal

---

first, final decision, prong of the *Williamson* ripeness test, and not subject to the second prong." *Id.* at 220 (citing *Southview*, 980 F.2d at 97). In the case at bar, Plaintiff's "takings" claim, subject to both *Williamson* prongs, is unripe. Unlike in *Gavlak*, Plaintiff here has made no claim that the zoning board's decisions were arbitrary and capricious, but rather contends that the Defendants acted with intent – "maliciously and wrongfully for the specific purpose of inflicting injuries upon the plaintiffs." Doc. 50, ¶ 8.

[7] In so stating, the Court expresses no opinion regarding the timeliness or the merits of a state court "takings" claim if brought by Plaintiff.

"takings" claim.

To the extent that Plaintiff may assert that his Complaint contains other causes of action, those claims may remain pending for the present. In addition, Defendants may, if so advised, move to dismiss those other claims; their present motion targets only the takings claim.

Alternatively, Plaintiff may choose to withdraw his remaining claims in anticipation of litigating his "takings" claim in state court.

In any event, and in order that the case in this Court be properly administered, counsel for Plaintiff is directed to describe Plaintiff's intentions in a letter to the Court, with copy to Defendants' counsel, not later than December 12, 2014.

It is SO ORDERED.

Dated: New Haven, Connecticut
November 18, 2014

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge