CHRISTOPHER KOMONDY (Substituted
Plaintiff),

        Plaintiff,

v.

MARIO GIOCO, JUDITH BROWN, and
ZONING BOARD OF APPEALS, TOWN
OF CHESTER,

        Defendants.

No. 3:12 - CV - 250 (CSH)

**MAY 25, 2017**

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 74]

**HAIGHT, Senior District Judge**:

## I.  FACTUAL BACKGROUND

Plaintiff Christopher Komondy brings this action on behalf of his deceased wife, Marguerite Komondy, against the Town of Chester and its zoning officials to redress alleged infringement of her constitutional rights with respect to residential property she owned at 29 Liberty Street in Chester, Connecticut (the "Liberty Street property").  Defendants now bring a summary judgment motion, seeking judgment as a matter of law on Plaintiff's § 1983 "class of one" equal protection claim.

The background facts of the case are as follows.  Margaret Komondy commenced this action on February 20, 2012.  Doc. 1 ("Complaint").  Upon her death in June of 2013, Christopher Komondy successfully moved the Court to become the substituted plaintiff as executor of her estate. Doc. 41 & 42.  Plaintiff Christopher Komondy then filed an Amended Complaint, reflecting his

plaintiff status. *See* Doc. 50 ("Second Amended Complaint" or "SAC"). That complaint is now the operative complaint in this action.

Defendants include Mario Gioco, who at all relevant times held the position of Chairman of the Town of Chester Zoning Board of Appeals ("ZBA"); Judith Brown, a Zoning Enforcement Officer employed by the Town of Chester; and the Town of Chester, a municipality within the State of Connecticut (herein collectively "Defendants"). *Id.* (SAC) , ¶¶ 4-6. Plaintiff alleges that the Defendants unlawfully enforced Chester's Zoning Regulations, § 113B.5, by directing removal of a mobile home that the Komondys placed on the Liberty Street property as a temporary residence during the anticipated construction of their new home.

The Komondys' former historic home had been destroyed by fire on March 5, 2005. *Id.*, ¶ 9. Because the structural damage from the fire was so extensive, the "remainder of [the] dwelling was demolished in the interest of safety." *Id.* Mrs. Komondy thereafter sought permission from the Town of Chester, pursuant to § 113B.5 of the Chester Zoning Regulations, to remain on her property in the temporary mobile home while her permanent home was reconstructed. *Id.,* ¶ 10. On March 14, 2005, she received a permit to install the mobile home on the premises , a "temporary dwelling" in which she could live for a maximum period of six months. *Id.*, ¶¶ 10-11. Upon expiration of the six-month period, Mrs. Komondy applied for an extension of the permit from the Town of Chester. The extension, however, was denied by Chester Zoning Enforcement Officer Brown on August 25, 2006. *Id.*, ¶ 13.

Mrs. Komondy thereafter filed an appeal of the permit denial and an application for a variance from § 113B.5, but the Chester ZBA denied both applications on December 18, 2006. *Id.,* ¶ 14. She subsequently filed appeals of the Chester ZBA decision in the Connecticut Superior Court,

Judicial District of Middletown, and then in the Connecticut Appellate Court. *Id.*, ¶ 15. *See Komondy v. Zoning Bd. of Appeals of Town of Chester*, Case No. MMX-CV07-4006628-S (Conn. Super. Ct. Jan. 19, 2007); *Komondy v. Zoning Bd. of Appeals of Town of Chester*, 127 Conn. App. 669 (2011). The appeals were ultimately dismissed on April 5, 2011. *See Komondy*, 127 Conn. App. at 690 ("[I]t remains that the court determined that no unusual hardship existed to warrant a variance from § 113B.5 of the regulations" and "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance.") (citations and internal quotation marks omitted).

On February 2, 2012, Mrs. Komondy received a letter from Chester's legal counsel, informing her that the Town would "remov[e] the trailer on [her] property . . . if it [was] not removed by [her]" and "the costs and expenses of that removal would be charged against [her], resulting in a lien on the subject real property." Doc. 50, ¶ 23. Two weeks later, Town representatives and contractors entered the property at 29 Liberty Street to inspect the trailer and evaluate disconnection of utilities in preparation to remove the trailer. *Id.*, ¶ 24. Mrs. Komondy, then residing in the trailer with her spouse Christopher Komondy, was seventy-nine years old, suffering from "stage 4 cancer," and undergoing "weekly chemotherapy sessions." *See* Doc. 1 (original Complaint), ¶ 23.

Mrs. Komondy commenced this action in the District of Connecticut on February 20, 2012. Doc. 1. In her original Complaint, she maintained that Chester's Zoning Regulations, § 113B.5, barring her from remaining in a temporary mobile home on her property during re-construction of her home, was "unconstitutional," "unreasonable," and "confiscatory" as applied to her. Doc. 1, ¶¶ 17-18. She also specifically alleged that "defendant Judith Brown and [the] Town of Chester have attempted to deprive [her] of all 'economically viable use' of [her] property and therefore effected

a 'taking' under the Fifth and Fourteenth Amendments" of the United States Constitution. *Id.*, ¶ 25.

Two days after filing her Complaint, she sought a preliminary injunction to prevent the Town from

removing her mobile home from the premises of 29 Liberty Street. Doc. 3. She subsequently

withdrew the motion after Chester's counsel represented that the Town agreed not to take any action

to remove her mobile home during the pendency of this action. Doc. 14.   On June 4, 2013,

Marguerite Komondy died. Doc. 35 ("Suggestion of Death").

As described *supra,* on January 29, 2014, the Court granted an "Amended Motion to

Substitute Plaintiff," filed on behalf of Christopher Komondy as the surviving spouse of the deceased

Marguerite Komondy. Doc. 48.  On February 6, 2014, Christopher Komondy filed the Second

Amended Complaint [Doc. 50], once again seeking recovery from the prior named Defendants for

violation of his wife's constitutional rights with respect to the property at 29 Liberty Street in

Chester. In that SAC, he also alleged that Chester's zoning regulation, § 113B.5, as applied to 29

Liberty Street, was an attempt "to deprive plaintiff of all 'economically viable use' of said property

and therefore effected a 'taking' [without just compensation] under the Fifth and Fourteenth

Amendments." Doc. 50 (SAC), ¶ 28.

Pursuant to Federal Rule 12(c) of Civil Procedure, the Defendants filed a motion for

judgment on the pleadings, asserting that "Plaintiff's federal taking[s] claim in his operative

complaint should be dismissed" because it "is not ripe for adjudication and, as a result, this Court

lacks subject matter jurisdiction over the claim." Doc. 51, at 1. The Court granted that motion in

a Ruling dated November 18, 2014, holding that the takings claims was dismissed, but "to the extent

that [Plaintiff's] Complaint contains other causes of action [*i.e.*, a "class of one" equal protection

claim, a § 1983 claim against the Town of Chester], those claims may remain pending for the

present." *Komondy v. Gioco*, 59 F. Supp. 3d 469, 481 (D. Conn. 2014).

The Defendants have now filed a Motion for Summary Judgment [Doc. 74], asserting that "there is no genuine dispute of material fact, and Defendants are entitled to summary judgment on the remaining claim[ ]" – "class of one" equal protection under § 1983 – as a matter of law. In that motion, they argue:

1. Plaintiff cannot identify any similarly situated property that was treated differently;

2. The Defendants had a rational basis for treating the comparator[s] identified by Plaintiff differently;

3. The Individual Defendants lack the required "personal involvement" necessary to impose any liability against [them] on any of the Plaintiff's claims which are brought pursuant to 42 U.S.C. § 1983; and,

4. The Individual Defendants are entitled to qualified immunity.

Doc. 74, at 1-2.

## II. STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if he or she "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Accordingly, the Second Circuit will affirm a ruling on summary judgment "only if the evidence, when viewed in the light most favorable to the party against whom it was entered, demonstrates that there is no genuine issue as to any material fact and that judgment was warranted as a matter of law." *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 138 (2d Cir. 2017) (citing *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 140 (2d Cir. 2008)).

In outlining the standard for this "provisional remedy," the Second Circuit has previously summarized:

> [First,] summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted).

Applying the summary judgment standard, a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party;" and a fact is deemed "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With respect to burden of proof, although the movant must establish that it is entitled to summary judgment, "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial." *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001)(citing *Celotex*, 477 U.S. at 324) (internal quotation marks omitted). Rather, the defendant "need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." *Parker,* 260 F.3d at 111. In other words, the party opposing summary judgment "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In evaluating a motion for summary judgment, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted). Moreover, the court "must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party.*" Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 78 (2d Cir. 2002). In drawing such inferences, the only evidence the court must consider is "admissible evidence." *Presbyterian Church of Sudan v. Talisman Energy*, Inc., 582 F.3d 244, 264 (2d Cir. 2009).

On summary judgment, the court's duty is not to "weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citing *Anderson*, 477 U.S. at 249). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Ins. Co.* 221 F.3d 394, 398 (2d Cir. 2000)).

Finally, "[t]he district court's judgment may be affirmed 'on any ground fairly supported by the record.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 29 (2d Cir. 2017) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001)). Therefore, the Court of Appeals "may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds no[t] relied upon by the district court." *Mitchell v. City of N.Y.*, 841 F.3d 72, 77 (2d Cir. 2016) (citation omitted).

# III. **DISCUSSION**

## A. **Summary of Undisputed Facts**

From the Local Rule 56(a)(1) Statements of the Parties [Doc. 74-1, Doc. 75-1], the Court discerns the following undisputed facts.[1]

Plaintiff Christopher Komondy is the trustee of the Liberty Street Trust. Doc. 74-1 & 75-1, ¶ 1. According to the Chester deeds on file, the property at 29 Liberty Street, Chester, Connecticut, is now owned by that trust. *Id.*, ¶ 2. Prior to the formation of the trust, the property was owned by Marguerite Komondy. *Id.*, ¶ 3.

In early 1969, the Town of Chester adopted Zoning Regulations. *Id.*, ¶ 4. Section 113 of those regulations related to mobile homes; and Section 113B.5, was and remains entitled, "Temporary Use During Construction of Home." *Id.*, ¶¶ 5-6. Pursuant to Section 113B.5, after notifying a Zoning Compliance Officer, "a temporary dwelling [may be placed] on premises of the owner [of the property] during construction of such owner's permanent dwelling upon the same premises, provided that such mobile home shall not remain upon said premises for more than six months from the time that it is first placed thereon . . . ." *Id.*, ¶ 6; *see also* Ex. 1 to Affidavit of Zoning Officer Judith Brown (herein "Brown Aff.") (Doc. 74-4), at 9.

The property at 29 Liberty Street was damaged by fire in March 2005. Doc. 74-1 & 75-1, ¶ 7. On March 15, 2005, Marguerite Komondy applied for a zoning permit to allow a mobile home

---

[1] The Court cites only one paragraph number for both Statements of Fact [Doc. 74-1 & 75-1] because the numbered paragraphs in the two statements necessarily correspond to each other. *See* D. Conn. L. Civ. R. 56(a) (mandating that opposing papers on summary judgment include a Local Rule 56(a)2 Statement with numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement). The undisputed facts recited in Part III.A. are derived from and cited to the parties' statements.

on the property. *Id.*, ¶ 8. The permit was granted and a mobile home was placed on site. *Id.*, ¶ 9. The mobile home was permitted to remain on the property for six months pursuant to Section 113B.5. *Id.*, ¶ 10. The Zoning Enforcement Officer for the Town of Chester generally allows the mobile home to remain on the property (during reconstruction of the permanent home) up to one year prior to taking legal action for the mobile home's removal. *Id.*, ¶ 11. Since February 2006, when she became Zoning Enforcement Officer, Defendant Judith Brown has followed the procedure of allowing the mobile home to remain for "an additional six month period." *Id.*, ¶ 12.

The mobile home at 29 Liberty Street remained on the property beyond the six-month period allowed under the permit and longer than the one-year "grace period," which was normally given to all properties in town. *Id.*, ¶ 13. On July 28, 2006, after the mobile home had been at 29 Liberty Street for more than sixteen months, Brown issued a "Cease & Desist" Order. *Id.*, ¶ 14; *see also* Ex. 4 to Brown Aff. (Doc. 74-4), at 16. Thereafter, on August 25, 2006, Brown wrote a letter to the Komondys and informed them that no further extensions of their mobile home permit would be granted, as a Cease & Desist Order had been issued. Doc. 74-1 & 75-1, ¶ 15. In that letter, she also informed the Komondys that Section 113B.5 does not allow for extensions or successive applications for a mobile home permit. *Id.*, ¶ 16.

After several years of non-compliance with the Cease & Desist Order, a lawsuit was filed in the Connecticut Superior Court, bearing docket number MMX-CV11-6005284-S and captioned "Judith Brown Zoning Enforcement Officer v. Marguerite Komondy." *Id.*, at ¶ 17. On August 24, 2011, a judgment was entered against Ms. Komondy in favor of Zoning Enforcement Officer Brown. *Id.*, ¶ 18. As a result of this judgment, John S. Bennet, counsel for the Town of Chester, wrote to Mrs. Komondy regarding removal of the mobile home on the 29 Liberty Street property. *Id.*, ¶ 19.

Soon thereafter, this lawsuit was filed. *Id.*, ¶ 25.

To date, there has been no construction on the property at 29 Liberty Street to rebuild the home that burned down. *Id.*, ¶ 23. The mobile home remains on the property. *Id.*, ¶ 21.

**B.    "Class of One" Equal Protection Claim Pursuant to § 1983**

Plaintiff Christopher Komondy's Second Amended Complaint contains no headings or delineated claims. Therefore, the Court must attempt to interpret the language of his complaint to determine what claims may be supported by the alleged facts. *See, e.g., Simonton v. Runyon*, 232 F.3d 33, 36-37 (2d Cir. 2000) ("[G]enerally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim.") (citation and internal quotation marks omitted); *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 (2d Cir.1997) ("Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.") (citation and internal quotation marks omitted). *See also Sabilia v. Richmond*, No. 11-739, 2011 WL 7091353, at *26 (S.D.N.Y. Oct. 26, 2011) (Even though "plaintiffs did not label these allegations as a breach-of-contract claim [this] is not fatal to their pleading, since we must look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those factual allegations.") (citation omitted).

**1.    Section 1983**

"The Equal Protection Clause [of the Fourteenth Amendment] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. Of Mineola*, 273 F.3d 494, 499

(2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  *See also Latrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike.") (quoting *Cleburne*, 473 U.S. at 439).   A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or "class of one."  *See Cobb v. Pozzi*, 363 F.3d 89, 109-10 (2d Cir.2004).  *See also Musco Propane, LLP v. Town of Wolcott*, 891 F. Supp. 2d 261, 271 (D. Conn. 2012) ("There are two types of equal protection claims available under 42 U.S.C. § 1983: selective enforcement and class of one."), *aff'd sub nom. Musco Propane, LLP v. Town of Wolcott Planning & Zoning Comm'n*, 536 F. App'x 35 (2d Cir. 2013).

Examining the text of Plaintiff's Second Amended Complaint, the Court finds language suggesting a "class of one" equal protection claim under 42 U.S.C. § 1983 against all Defendants.[2]

---

[2]  A fair reading of the Second Amended Complaint reveals only a "class of one" claim. In his opposition papers to the summary judgment motion, however, the Plaintiff describes the elements necessary to establish a selective treatment claim, but then asserts in his heading, "[t]he plaintiff's claim is based upon a 'Class of One' Equal Protection violation." Doc. 75, at 5.  If Plaintiff is attempting to set forth a selective enforcement claim through his opposition papers, that effort is futile.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs. Of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

Furthermore, even if Plaintiff were allowed to create such a "selective enforcement" claim through his papers, that claim would fail.  Plaintiff has made no allegations, nor provided any factual proof, that either Brown or Gioco had any improper or discriminatory motives – a key element of "selective enforcement"– in making their decisions in this case. *See, e.g., Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) ("A violation of equal protection by selective enforcement arises if: . . . [that] treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (same).   Here, no genuine fact issue remains: there was simply no demonstrated constitutionally improper reason that motivated Defendants' conduct. *See e.g.*, *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 319 (D.

Specifically, Plaintiff alleges that in depriving Plaintiff of "equal protection of the laws in violation of the Fourteenth Amendment," Defendants have violated Section 1983 of the United States Code.[3] Doc. 50, ¶ 22.

Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Id.* at 49 (quoting *United States v. Classic*,

---

Conn. 2015) (in zoning context, dismissing selective enforcement action against town where no reasonable jury could conclude that ill-will or malice motivated defendants to discriminate against plaintiffs), *aff'd sub nom. Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016).

[3] In his complaint, Plaintiff also cites 42 U.S.C. § 1988 as enforcing his rights to equal protection of the laws. He does not specify why that provision applies to his claim. Section 1988, the "Civil Rights Attorney's Fees Awards Act," "was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations" by providing such citizens "the opportunity to recover what it costs them to vindicate these rights in court." *Ortiz v. Regan*, 980 F.2d 138 (2d Cir. 1992) (quoting S. Rep. No. 1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910). *See also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("Section 1988 provides that a prevailing party in certain civil rights actions may recover 'a reasonable attorney's fee as part of the costs.'") (quoting 42 U.S.C. § 1988). It is thus likely that Plaintiff seeks to recover "a reasonable attorney's fee as part of the costs" in his action to enforce his § 1983 claim in the event that he is the "prevailing party." 42 U.S.C. § 1988 (b) ("Attorney's fees").

313 U.S. 299, 326 (1941)).

"[M]unicipalities [are] liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action [was] implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir.2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978)). *See also Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) ("Municipalities and other local government bodies . . . are considered 'persons' within the meaning of § 1983.").[4]

However, "a single incident of unconstitutional conduct by a non-policymaking employee" of the City will generally not suffice to establish liability." *Fisk v. Letterman*, 501 F. Supp. 2d 505, 527 (S.D.N.Y. 2007) (citations omitted). "Instead, municipalities may only be liable under § 1983 if their violation of the plaintiff's federal rights resulted from an official policy, custom, or practice of the municipal body." *Id.* (citing *Monell*, 436 U.S. at 694; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)).

Specifically, "[i]n order to prevail on a claim against a municipality under section 1983 based

---

[4] The Court also notes that unlike a state, a municipality has no sovereign immunity. As the Connecticut Supreme Court has stated:

A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action. . . . Municipalities do, in certain circumstances, have a governmental immunity from liability.... But that is entirely different from the state's sovereign immunity from suit...."

*Vejseli v. Pasha*, 282 Conn. 561, 573 (2007) (quoting *Martinez v. Dept. of Public Safety*, 263 Conn. 74, 87 (2003)) (emphasis in original removed; internal quotation marks omitted). *See also Nisinzweig v. Kurien*, No. X05CV960150688S, 2001 WL 1075761, at *5 (Conn. Super. Ct. Aug. 21, 2001) ("A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued ... in any action.") (citations omitted).

on acts of a public official, such as a zoning officer, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 380 (D. Conn. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008) (citing *Monell*, 436 U.S. at 690–91)). Absent a policy or custom of inflicting such injury, a § 1983 claim may not proceed against a municipality.

With respect to individual liability, "[p]ublic officials sued in their individual capacity are entitled to qualified immunity from suit unless [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right[;] [a]nd even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." *Back*, 365 F.3d at 129 (citations and internal quotation marks omitted).

Furthermore, if an individual does not have qualified immunity, "[a] finding of 'personal involvement . . . in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983." *Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir.2001) (internal quotation marks omitted).

## 2. <u>Class of One Equal Protection</u>

In the case at bar, as stated *supra*, the constitutional right Plaintiff claims was violated is his right to "equal protection" as a "class on one." Specifically, in paragraph 21 of his Second Amended Complaint, Plaintiff states, "Other similarly situated property owners, including but not limited to, property owners of residential land within the Town of Chester, specifically located at 80 Wig Hill Road and 5 Wig Hill Road were permitted to maintain mobile homes on the land for many years."

Doc. 50, ¶ 21. Moreover, the "defendants have treated the plaintiff differently from at least two other identically situated property owners in the Town of Chester and have thereby deprived [him] of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code." *Id.,* ¶ 22. Thereafter, Plaintiff summarizes, at ¶ 28 that "[i]n the manner described above, the defendant Judith Brown and Town of Chester have attempted to deprive the plaintiff of all 'economically viable use' of said property and therefore effected a 'taking' under the Fifth and Fourteenth Amendments." *Id.,* ¶ 29.

As stated *supra*, the Court has previously dismissed Plaintiff's "takings" claim. Doc. 64. Defendants move for summary judgment on the remaining § 1983 "class of one" equal protection claim, asserting that the "Plaintiff cannot identify any similarly situated property and the defendants had a rational basis for dissimilar treatment." Doc. 74-2, at 3.

### 3.      Prima Facie Elements of "Class-Of-One" Equal Protection Claim

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (*per curiam*), the United States Supreme Court recognized the existence of a "class of one" equal protection cause of action, pursuant to 42 U.S.C. § 1983, against a municipality for arbitrary or irrational application of property laws. In that case, the Supreme Court held that a property owner stated a valid "class of one" equal protection claim by pleading that the defendant village required the plaintiff property owner to grant a 33-foot easement as a condition to connect to the municipal water supply, whereas similarly situated owners had only been required to provide a 15-foot easement; and there was "no rational basis for the difference in treatment." 528 U.S. at 564. As the Supreme Court summarized, "successful equal protection claims [may be] brought by a 'class of one,' where the plaintiff alleges

15

that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

To establish a "class-of-one" equal protection claim, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston*, 610 F.3d at 59 (quoting *Clubside*, 468 F.3d at 159). *See also Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).

As one court in this District noted, the requirements of a "class-of-one" claim are "in keeping with the highly deferential nature of rational-basis review under the Equal Protection Clause, which 'does not demand . . . that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification.'" *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 317 (D. Conn. 2015) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 16 (1992)).[5] Rather a court need only "ascertain that a purpose may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Id.*; *see also Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284-86 (2d Cir. 2015) (discussing deferential principles of rational-basis review under the Equal Protection Clause).

---

[5] *Aff'd sub nom. Gray v. Maquat*, No. 15-2448, 2016 WL 5340256 (2d Cir. Sept. 21, 2016).

In particular, with respect to equal protection claims against local governmental officials (such as zoning officers), "the reality is that local town officials engage in a vast range of highly discretionary decisions that affect the property rights and everyday activities of town citizens." *Gray*, 115 F. Supp. 3d at 317. Moreover, "[s]mall town governments often make decisions with less than perfect information and ordinarily without the benefit of sophisticated enforcement resources." *Id.* Accordingly, "not every wrong or ill-informed decision by a local government official is grounds for a federal constitutional cause of action." *Id.*

### 4. <u>Similarly Situated Comparators</u>

A "class of one" plaintiff must provide evidence that he was treated differently from others "similarly situated," *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005);[6] and the people who are similarly situated are similar "in all material respects" and "engaged in comparable conduct." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be *extremely high*." *Neilson*, 409 F.3d at 104 (emphasis added). Indeed, the plaintiff pursuing a class of one claim must show that the comparator(s) are "prima facie identical in all relevant respects." *Id.* (citing *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). *See also Morron v. City of Middletown*, 464 F. Supp. 2d 111, 120 (D. Conn. 2006) (same). This extremely high degree of similarity is mandated in a class of one claim because "[t]he similarity and equal protection inquiries are . . . virtually one and the same in ... a 'class of one' case." *Nielson*, 409 F.3d at 105.

---

[6] *Overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) ("to the extent that it conflicts with the holding in *Engquist* [*v. Oregon Department of Agriculture*, 553 U.S. 591 (2008)]").

Furthermore, the Second Circuit has held that this burden of demonstrating similarity "is more stringent than that used at the summary judgment stage in the employment discrimination context." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.2006) (Sotomayor, *J.*). This is because a "class of one" plaintiff must demonstrate that he "was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy" that an improper purpose is certain. *Id.* (citation and internal quotation marks omitted). "[W]hether parties are similarly situated is a fact-intensive inquiry." *Id.* A court may grant summary judgment in the defendant's favor only "where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Id.*

Finally, in the context of land use permits, property owners have attempted to argue that "[t]o establish that another property owner is 'similarly-situated,' [they] need only show that the use of the property was the same; that is that other property owners actually were engaged in the same regulated use." *Gray*, 115 F. Supp. 3d at 319. However, such an argument fails because "[e]nforcement context, sequence, and timing also matter." *Id.* As the First Circuit has noted, "[i]n the land-use context, timing is critical and, thus, can supply an important basis for differential treatment." *Id.* (quoting *Cordi Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007)). In fact, "[t]he 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen*, 494 F.3d at 251 (citing *Olech*, 528 U.S. at 565).

"As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). However, "a court can properly grant summary judgment where it is clear that no reasonable jury

could find the similarly situated prong met." *Id.* (citing *Cruz v. Coach Stores,* 202 F.3d 560, 568 (2d Cir. 2000)). In the case at bar, Plaintiff provides three allegedly "similarly situated" comparators located in Chester, Connecticut: 5 Wig Hill Road, 80 Wig Hill Road, and 40 Bokum Road.[7] Doc. 75-3 (Plaintiff's Responses to Interrogatories), ¶ 11. As to these properties, Plaintiff alleges that "[t]hese properties have had mobile/trailer homes on the property for periods longer or as long as my property and/or they received a renewal/extension for their temporary structures where I was denied." *Id.*, ¶ 12.

For the reasons set forth below, none of these alleged "comparators" is contextually similarly situated to Plaintiff. As Defendants assert, Plaintiff has failed to meet the "similarly-situated" element of his class-of-one claim.

### a. **5 Wig Hill Road**

In the Amended Complaint, Plaintiff stated that there are two properties which he regards as comparators for purposes of his "class of one" equal protection claim: 5 Wig Hill Road and 80 Wig Hill Road in Chester, Connecticut. Doc. 50, ¶ 21. During discovery, Plaintiff identified a third property located at 40 Bokum Road, Chester, Connecticut, in his answers to interrogatories. *See* Doc. 74-5 (Ex. C) (Responses to Interrogatories dated March 24, 2015, at No. 11). Plaintiff further stated that the alleged "similarly situated" properties "have had mobile/trailer homes on the property for periods longer or as long as my property and/or they received a renewal/extension for their

---

[7] In Plaintiff's Memorandum in opposition to Defendants' summary judgment motion, he asserted that "[i]n the instant case, . . . the defendants denied him the right to keep a mobile home on his property while allowing similarly situated individuals that very right." Doc. 75, at 3. He then specified that "[t]he right to keep a mobile home on the owner's property was given to the property owners of 80 Wig Hill Road, 5 Wig Hill Road, and 40 Bokum Road all in Chester, Connecticut." *Id.,* at 3-4. *See also* Doc. 75-1 ("Plaintiff's Statement of Material Facts In Dispute"), ¶¶ 1-3.

temporary structures where I was denied." *Id*., at No. 12.

Defendants have, however, come forward with evidence to distinguish these properties from that of Plaintiff. First, as to 5 Wig Hill Road, Defendants have produced the affidavit of Defendant Judith Brown, Zoning Enforcement Officer for the Town of Chester since February 2, 2006. Doc. 74-4, ¶ 3. Based upon her personal knowledge and experience in her position and a review of Town zoning files, Brown testified by affidavit that the mobile home on the property at 5 Wig Hill Road predates the institution of the Chester Zoning Regulations, which were applied to the property at issue in this suit. *Id.*, ¶ 30. Specifically, the "[e]xisting structures at the time the Zoning Regulations were adopted were considered 'grandfathered' and did not need to conform to the Zoning Regulations." *Id.*, ¶ 31. Therefore, § 113B.5 of the Zoning Regulations of the Town of Chester "did not apply to the mobile home located at 5 Wig Hill Road." *Id.*, ¶ 32.[8]

---

[8] A district court may "take judicial notice of all documents in the public record, including . . . the provisions of the [Town] zoning code." *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011). In this case, the Court takes judicial notice that the Chester Zoning Regulations, at § 20, define a "non-conforming improvement or characteristic" as "[a]ny improvement or characteristic of any land or improvement which does not conform to these Regulations but which was legally and actually existing at the effective date of these Regulations or any pertinent amendment thereto." Thereafter, the Regulations state, at § 50A:

> Except as otherwise expressly provided in these regulations, a nonconforming use of any land or improvement or a nonconforming characteristic of any land or improvement, which has not been changed to conformity with these regulations or otherwise terminated, may remain and be continued and shall not be required to conform to these regulations

Such provisions are dated April 1, 2005. If similar provisions were in effect from the adoption date of the Chester Zoning Regulations, town zoning officers may have relied upon them to "grandfather" properties which existed prior to such regulations. The Court need not speculate about this, however, where Zoning Enforcement Officer Brown testified that it was the Town's policy to view such pre-existing structures as "grandfathered" when the zoning regulations were adopted in 1969.

As Brown states, "a property card for 5 Wig Hill Road contains the following notation: 'Building Permit 1/11/68 $3,000 No Sewage Permit.'" *Id.,* ¶ 33. According to Defendants, the card shows that the mobile home on that property existed there as of January 1968. Moreover, Brown stated that "[o]n August 12, 1969, the Town of Chester approved an addition of two bedrooms and a porch, which would have required a foundation." *Id.,* ¶ 34. Therefore, after that addition, the home on the property "would not be considered mobile or temporary." *Id.* Accordingly, "Section 113 of the Chester Zoning Regulations did not apply to the mobile home located at 5 Wig Hill Road." *Id.,* ¶ 35.

Plaintiff has submitted additional documentation of subsequent events regarding the 5 Wig Hill Road property. That evidence shows that on September 26, 2005, the owners of 5 Wig Hill Road obtained a permit to demolish and remove the "mobile home" then present on the site and to build a duplex home. *See* Doc. 75-3, at 21-22. The building of this new structure, however, does nothing to contradict Brown's testimony that the mobile home present in 1969 was "grandfathered" under the zoning regulations and/or became viewed as a permanent structure when the two bedrooms and porch were added to the trailer in 1969.

**b.     80 Wig Hill Road**

With respect to Plaintiff's second alleged comparator, 80 Wig Hill Road, Chester, Connecticut, Defendant Brown testified by affidavit that "[i]t is possible that the mobile home [on that property] predated the institution of zoning regulations" in Chester. *Id.,* ¶ 37. She produced "a property card which shows activity on the site as early as March 1, 1968," *id.,* the year before the

zoning regulations were adopted by the Town of Chester. *See id.*, Ex. 10 (Property Card).[9]

Furthermore, Brown explained that "on December 21, 1973, the Town of Chester approved a Building Permit for the placement of a foundation 'under a pre-existing nonconforming trailer.'" *Id.*, ¶ 38; *see also id.*, Ex. 11 (Building Permit). Thereafter, "on April 27, 1974, the Town of Chester approved an application for a Building Permit for the addition of a covered porch." *Id.*, ¶ 39 & Ex. 12 (Application for Building Permit). "As a result of the placement of the foundation and [the addition of the] covered porch, the home on the property is no longer considered mobile or transportable, and is not [therefore] regulated under Chester Zoning Regulation Section 113B.5." *Id.*, ¶ 40.

_____

[9] Plaintiff makes much of the fact that Brown does not state definitively whether a non-conforming trailer existed at 80 Wig Hill Road in 1968, prior to adoption of the Chester Zoning Regulations. Doc. 75, at 6. In any event, according to Brown, the owner of the trailer at 80 Wig Hill Road later requested and received permission to turn the trailer on that site into a permanent structure via additions of a foundation and porch. *See* Doc. 74-4, ¶ 40, Ex. 11 (Building Permit , stating, "This foundation was constructed under a pre-existing non-conforming trailer."), & Ex. 12 (Building Permit, noting "Addition of a 15 x 12 foot covered porch added to the present address."). The fact that the property owners sought to make permanent additions to the trailer makes that property dissimilar to that of 29 Liberty Street, which contains a trailer strictly intended for temporary use during the building of a permanent home.

Plaintiff has provided no facts to demonstrate that either 5 Wig Hill Road or 80 Wig Hill Road is "similarly situated" to 29 Liberty Street. Rather, he states in conclusory fashion that the owners of both properties "were permitted to maintain mobile homes on the land for many years." Doc. 50, at 4 (¶ 21). He provides no dates or circumstances regarding the maintenance of mobile homes on said properties. He also provides scant documentation, which is mostly duplicative of those documents presented by Defendant Brown. Instead, he questions Brown's testimony regarding the additions at both 5 Wig Hill Road and 80 Wig Hill Road, arguing that they may not have been actually completed. He provides no supporting evidence and does not appear to have investigated the facts. A simple view of the properties at issue would reveal whether there exist building foundations on the properties at Wig Hill Road. Such foundations are not only matters of public record, they may be viewed from the public road. They may also be viewed on public websites, such as "Google Map." In short, Plaintiff challenges the notion that the additions were completed by simply speculating that they may not have been done. Such speculation is not evidence and creates no genuine issue of material fact.

In contrast, Plaintiff has offered no evidence regarding the property owners of 80 Wig Hill Road and/or the events that may have occurred regarding the trailer on that site. Plaintiff has thus offered no evidence to contradict what has been provided by Defendants.

### c.     <u>40 Bokum Road</u>

Finally, as to Plaintiff's third alleged comparator, 40 Bokum Road, Chester, according to Brown, the home on that property was destroyed by a fire in 2004. Doc. 74-4, ¶ 42. After the fire, a mobile home was placed there during reconstruction of the home. *Id.*, ¶ 42. After the six-month period during which a mobile home was permitted, the home was not yet completed/removed. *Id.,* ¶ 43. As per Chester's informal policy, the property owner was provided with a six-month "grace period" with respect to the mobile home. *Id.* When that grace period expired, the mobile home remained on the property. *Id.*, ¶ 44. "On January 31, 2005, only five days after the grace period expired, the Zoning Enforcement Officer [for the Town of Chester] issued a Cease and Desist Order for the mobile home." *Id.*, ¶ 45 & Ex. 13.

Then, "[u]nlike the Plaintiff in this action, the owners of 40 Bokum Road applied for and received a building permit to rebuild their fire-damaged home." *Id.*, ¶ 45. Therefore, Brown testifies that the Bokum Road property differs from that of Plaintiff in that the Cease and Desist Order was issued more quickly at Bokum Road, a new home was actually constructed on the property, and the mobile home was removed. *Id.*, ¶¶ 45-47.

In response, Plaintiff offers documents to show that on January 7, 2004, and on August 26, 2004, the Chester Building Inspector, Robert Rose, informed Robert Hall, the co-owner of 40 Bokum Road with Eugene Hall, that the fire-damaged house on his property was unsafe and must be taken down and removed. Doc. 75-3, at 25-26. Then after Hall obtained a building permit for the new

house (signed 3/28/2005), there was a delay in the demolition of the old, badly incinerated house because "the tear down cost on Liberty Street [the fire-damaged house then owned by Marguerite Komondy] ha[d] already exceeded the budgeted $55,000.00 from the insurance company" and "[t]he additional work on that has affected the time schedule on the Hall property." *Id.*, at 31-32. From the September 9, 2005, email of Hall's counsel, Jane Marsh, to a Martin Heft of the Town of Chester, a contractor named "Sam" of Salecon, LLC in Salem, Connecticut, was to perform the demolitions on both properties, creating the delay. *Id.*, at 32.

The fact that the fire-damaged home at 40 Bokum Road was viewed as unsafe and subject to demolition shows a similarity to Plaintiff's property, which also contained a fire-damaged home that had to be demolished. However, the fact that the work at 40 Bokum Road was delayed due to the tear down of the Liberty Street home does nothing to show that the Bokum Road property was treated in any preferential way. *Id.*, at 31-32. Rather, it simply provides a reason that the Halls found it necessary to request an extension of their building permit for their new home – *i.e.*, to allow the contractor to complete the demolition at Liberty Street first. *Id.*

### d. **29 Liberty Street**

In the case at bar, it is undisputed that on March 5, 2005, the historical home on Plaintiff's property was destroyed by a fire. Doc. 50, ¶ 9. Nine days later, Mrs. Komondy received a permit to install a mobile home on the premises, a "temporary dwelling" in which she would be permitted to live for a maximum period of six months. *Id.*, ¶¶ 10-11. Mrs. Komondy proceeded to place a trailer on the property at 29 Liberty Street for six months; and upon expiration of the six-month period, she applied for an extension of the permit from Zoning Enforcement Officer Brown, who denied the extension. *Id.*, ¶ 13.

On July 28, 2006, after the Komondy trailer had been on the premises at 29 Liberty Street for more than sixteen months, Brown issued a "Cease and Desist" order. Doc. 74-4, Ex. 4 ("Cease & Desist Order," dated 7/28/2005).[10] It is undisputed that the Komondys have never obtained the requisite building permit to rebuild their home at 29 Liberty Street; and to date, no permanent structure has been built on the property. Doc. 74-2, at 9 (citing Brown Affidavit [Doc. 74-4], at ¶¶ 26-27). In fact, pursuant to an agreement of the parties during the pending litigation, the mobile home remains on the property.[11] Doc. 74-1 & 75-1, ¶¶ 21-22.

e. **Analysis**

At the outset, the Court notes that Plaintiff has failed to fulfill his evidentiary burden regarding similarly situated comparators on summary judgment. Defendants have provided an affidavit from Chester Zoning Enforcement Officer Brown, as well as town records regarding the properties at issue. In contrast, Plaintiff has declared in a conclusory fashion that the three properties were "similarly situated" and produced very little documentary evidence in an attempt to

---

[10] In the text of the "Cease & Desist Order," Brown wrote the following statements to Mr. & Mrs. Komondy:

> You are hereby ordered to discontinue this violation [of Zoning Regulations § 113B.5] by discontinuing the use of the mobile home as a dwelling and removing the mobile home from the premises within 30 days. The 30 days allowed is in excess of the minimum 10 days allowed for compliance under 8-12 of the Connecticut General Statutes. I have extended the time period for compliance in order to minimize the inconvenience of that compliance.

Doc. 74-4, at 16.

[11] *See* Doc. 13 ("Plaintiff's Motion to Withdraw Request for a Temporary Injunction"), at 1 ("Defendants' counsel has represented to plaintiff's counsel that the Town of Chester and its officials will not take any action to remove the plaintiff's mobile home from her property located at 29 Liberty Street in Chester, Connecticut during the pendency of this lawsuit.").

counter Defendants' evidence. Summary judgment is only "inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit . . . " *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted).

On summary judgment, it was Plaintiff's duty to present "admissible materials" for the Court to find that his claim arguably has merit. Rather than presenting evidence that the three property owners were "prima facie identical" to him, Plaintiff first declared that "[t]he defendants' attempt to distinguish these property owners from the plaintiff is without merit." Doc. 75 ("Memorandum in Opposition"), at 5. Moreover, he contended that "[t]he defendants' articulated position that the plaintiff and these individuals are not similarly situated is based on self serving statements of one of the individual defendants, Judith Brown." *Id*. Plaintiff further decried Brown's statements as "vague, unsupported and ambiguous at best," finding them absent of "any documentary evidence whatsoever." *Id.*, at 6.

Plaintiff's comments regarding the affidavit of Judith Brown, however, miss the mark. "The principles concerning admissibility of evidence do not change on a motion for summary judgment." *Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 352 (D. Conn. 2004) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)). Sworn, authenticated testimony by affidavit is admissible as relevant if it "a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b); *see also* Black's Law Dictionary (10th ed. 2014) (defining "admissible evidence" as "[e]vidence that is relevant and is of such a character (*e.g.*, not unfairly prejudicial, based on hearsay, or privileged) that the court should receive it").

Moreover, the fact that a party presents factual evidence which favors his position – which

Plaintiff labels "self-serving" – does not negate its relevance or competence. Such evidence was factual in nature, presented under oath, and based upon Brown's personal experience as Chester's Zoning Enforcement Officer (from February 2, 2006, to the present) and her review of Town zoning files, which she has appended to her affidavit. Doc. 74-4, ¶¶ 3-4.[12] The zoning files contained records and building permits relating to the properties Plaintiff has put forward as comparators to 29 Liberty Street. Plaintiff cannot refute such evidence by simply disagreeing with it. He must present his own factual evidence to show that these properties were indeed true comparators to 29 Liberty Street. To oppose summary judgment, Plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The few property records Plaintiff presented were either duplicative of those presented by Defendants or failed to show how the alleged comparators were similarly situated to Plaintiff. *See, e.g.*, Doc. 75-3, at 32 (email of Marsh to Heft dated 9/9/2005, indicating that the "additional work" for the "tear down" of the Liberty Street property delayed the demolition of the fire-damaged house at 40 Bokum Road).

Furthermore, with respect to Brown's motive in presenting the testimony in her affidavit, on summary judgment the Court makes no findings on credibility and does not weigh the evidence (a forbidden function). Rather, the Court determines whether there exists *a genuine dispute* with respect to a material fact. As the Second Circuit has stated:

---

[12] Defendants assert that Brown, as Zoning Enforcement Officer for the Town of Chester, "is in the position to read and apply the zoning regulations to properties within Towns." Doc. 76 (Defendants' Reply Memorandum), at 2. "If not appealed, her orders can become the final determination." *Id.* Moreover, a zoning enforcement officer is qualified to state whether a property is "grandfathered" into non-conforming uses or is not regulated under a specific zoning regulation. *Id.*

> "A motion for summary judgment may properly be granted – and the grant of summary judgment may properly be affirmed – only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010) ( *"Kaytor"*); *see* Fed.R.Civ.P. 56(a); *see, e.g.*, *Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 151 (2d Cir.2009) ("*Jasco*"). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor*, 609 F.3d at 545; *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("*Liberty Lobby* "). In reviewing the evidence and the inferences that may reasonably be drawn, the court "*may not make credibility determinations or weigh the evidence. . . . 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'*" *Reeves [v. Sanderson Plumbing Products, Inc.*], 530 U.S. [133,] 150 [ (2000) (lateral citation omitted)](quoting *Liberty Lobby*, 477 U.S. at 255 (emphases ours)); *see, e.g., Agosto v. INS*, 436 U.S. 748, 756 (1978) ("a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented").

*Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015) (some lateral citations omitted). *See also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994) ("Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the court on summary judgment.").

Plaintiff further attacks the Brown Affidavit, arguing that it lacks "documentary evidence" for her position. Doc. 75, at 8. However, as described *supra*, the Court finds that the statements in Brown's Affidavit refer directly to official zoning documents and property records appended thereto, including details regarding the presence of mobile homes on the comparator properties. Among these documents are the following: Doc. 74-4, at Ex. 4 ("Cease & Desist Order," dated 7/28/2006, issued to "Mr. & Mrs. Komondy); Ex. 8 (Building Permit 1/11/1968 $3,000 No Sewage Permit - for septic tank at 5 Wig Hill Road); Ex. 9 (Application and Approval for addition of 2 bedrooms and porch at 5 Wig Hill Road); Ex. 10 (Property Card indicating activity at 80 Wig Hill Road in March

of 1968); Ex. 11 (Building Permit dated 12/21/1973 for placement of foundation under a "pre-existing nonconforming trailer" at 80 Wig Hill Road); Ex. 12 (Building Permit dated 4/27/1974 for addition of covered porch at 80 Wig Hill Road); Ex. 13 ("Cease & Desist Order" dated 1/31/2005 for mobile home at 40 Bokum Road); and Ex. 14 (Building Permit to rebuild property destroyed in fire at 40 Bokum Road – "Modular-manufactured home on site of burned dwelling").[13]

Plaintiff submits some of the same Chester zoning documents as Defendants. Doc. 75-3, at 28-29. However, nothing he submits supports his position that the three alleged comparators were "similarly situated," that is to say, that any of them requested an indefinite extension of their temporary mobile home permit until their house could be approved and eventually built.

On summary judgment, the Court reminds the parties that "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists."[14] *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)); *see also* Fed. R. Civ. P. 56(a). In order to defeat the motion, the opposing party, in this case the Plaintiff, "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted). "When a motion for summary judgment is properly

---

[13] The Building Official who signed the Building Permit for 40 Bokum Road dated his signature as "3/28/04." The Court finds, however, that the correct year for that signature had to have been at least 2005 in that the date the applicant and property owner, Gene Hall, filed the application is shown as "2/2/05," which was two days after Zoning Official Cathie S. Jefferson had issued a "Cease & Desist Order" for the use of the mobile home at 40 Bokum Road. Doc. 74-4, at 31.

[14] The moving parties, here the Defendants, may also obtain summary judgment by showing that little or no evidence may be found in support of the Plaintiff's case. *See, e.g.*, *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

supported by documentary and testimonial evidence the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of fact." *Perry v. City of Stamford*, 996 F. Supp. 2d 74, 81 (D. Conn. 2014) (citation and ellipsis omitted). When reviewing the evidence presented, all ambiguities must be resolved and all inferences drawn in favor of the non-moving party. *See, e.g.*, *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied*, 484 U.S. 918 (1987).

"The role of a district court in considering a motion for summary judgment is therefore 'not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'" *Perry*, 996 F. Supp. 2d at 81. "When no rational jury could find in favor of the nonmoving party [the Plaintiff], because the evidence to support his case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

With respect to Plaintiff's "class of one" equal protection claim, pursuant to § 1983, the Court has reviewed all admissible evidence presented to determine whether there is a genuine issue regarding the existence of "similarly situated" comparator properties. At the outset, the Court notes that Brown's testimony indicates that the trailers on the two properties on Wig Hill Road pre-existed the adoption of the Chester Zoning Regulations so that the Town of Chester viewed them as "grandfathered" (not subject to conform with the new regulations). The property records produced support that inference. Doc. 74-4, ¶ 31; Ex. 8 & 10 (Property Cards for 5 and 80 Wig Hill Road). Moreover, additions were approved on these properties, which, when completed, turned them into permanent structures. *See* Doc. 74-4, ¶¶ 34, 38-39 (Town of Chester approved the addition of two

bedrooms and a porch at 5 Wig Hill Road, implicating a necessary foundation); Ex. 9 (Building Permit); Ex. 11 (Building Permit); & Ex. 12 (Application for Building Permit). Once the additions were installed, the trailers at 5 and 80 Wig Hill Road were no longer considered mobile and transportable. *Id.*, ¶¶ 29, 35. Therefore, even if they had not been grandfathered, the trailers, after modification, did not fall under Chester Zoning Regulation Section 113B.5. *Id.*, ¶¶ 30, 35.

In contrast to the Wig Hill Road properties, the trailer at 29 Liberty Street did not exist prior to the adoption of the Chester Zoning Regulations, and consequently lacked a basis to be considered "grandfathered." It was subject to Chester Zoning Regulation § 113B.5. No addition to the trailer was ever requested or granted, so it was never converted into a permanent structure. As described in § 113B.5, the trailer remains an intended "temporary dwelling on premises of the owner [of the property] . . . during construction of such owner's permanent dwelling." 29 Liberty Street is therefore not like the Wig Hill Road properties in "all material respects."

As to the third alleged comparator, 40 Bokum Road, as Brown testified, the permanent home at that address was destroyed by a fire in 2004. Doc. 74-4, ¶ 42. As at 29 Liberty Street, a mobile home was placed there as a temporary dwelling during reconstruction of the home and remained there after the six-month permissible period expired. *Id.,* ¶ 43. As per Chester's informal policy, the property owner was provided a six-month "grace period" with respect to the mobile home. *Id.* However, "only five days after the grace period expired, the then-Zoning Enforcement Officer [for the Town of Chester] issued a Cease & Desist Order for the mobile home." *Id.*, ¶¶ 44- 45 & Ex. 13. Thereafter, unlike the Komondys, "the owners of 40 Bokum Road applied for and received a building permit to rebuild their fire-damaged home." *Id*. ¶ 46; Ex. 14 (Building Permit with application dated 2/2/2005 – two days after property owners' receipt of "Cease & Desist Order,"

dated 1/31/2005). The home at Bokum Road was constructed and the mobile home removed. *Id.*, ¶ 47.

To the extent that the owners at 40 Bokum Road were somewhat similarly situated to Plaintiff, the Chester Zoning Officer treated the properties alike. The Officer allowed a six-month grace period following the original expiration of the six months permitted under § 113B.5 and then issued a Cease & Desist Order. However, Brown was more lenient with the Komondys than was her counterpart, Zoning Enforcement Officer Cathie S. Jefferson, who issued the "Cease & Desist Order" to the owners of 40 Bokum Road only 5 days (rather than 10 months) after the grace period expired. Doc. 74-4, at 30 (Ex. 13). Furthermore, the owners of 40 Bokum Road applied for a building permit *two days* after receiving the "Cease & Desist Order," and a permanent home was subsequently built on the site. The trailer has been removed from that property, whereas the temporary trailer remains on the Komondy property at 29 Liberty Street. The owners at Bokum Road thus worked to, and ultimately did, comply with the Chester Zoning Regulations.[15] In sum, the owners at 40 Bokum Road were treated more harshly by the Zoning Officer and eventually complied with the Chester Zoning Regulations. In light of these facts, the property owners of 40 Bokum Road are not similarly situated to Plaintiff.

On the record presented, Plaintiff has presented no property owners who were "prima facie identical" or "similarly situated" to the Komondys (regarding 29 Liberty Street). In other words, "no

---

[15] As the Court has previously noted, the only delay of record to the building of the home at 40 Bokum Road was the "additional work" required for the contractor, Salecon, LLC, to "tear down" the property at Liberty Street, which was accomplished first. Doc. 75-3, at 31. That delay was the reason provided by the owners of Bokum Road for their request for a six-month extension of time to build; but that delay resulted from work required at Plaintiff's property, 29 Liberty Street. There was no evidence of indefinite delay at 40 Bokum Road. As Brown testified, the Halls obtained a building permit for a new home and then built that home.

rational juror could find that a similarly-situated [property owner] was treated any differently," as required for a class-of-one equal protection claim. *Musco Propane, LLP v. Town of Wolcott Planning & Zoning Comm'n*, 536 F. App'x 35, 40 (2d Cir. 2013).

### 4. <u>Rational Basis for Treatment</u>

Next, Defendants argue that even if Plaintiff were able to produce evidence of "similarly situated" properties, Defendants had a "rational basis" for treating 29 Liberty Street in the manner in which they did. Doc. 74-2, at 10. Specifically, Defendants cite the legal standard set forth by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000): "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [1] she has been intentionally treated differently from others similarly situated and that [2] there is *no rational basis* for the difference in treatment." *See also Clubside*, 468 F.3d at 159 (emphasis added).

In the context of property law, "[a] zoning board's decision can be considered irrational only when the board acts 'with no legitimate reason for its decision.'" *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001) (quoting *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996)) (some internal quotation marks omitted). As this Court previously observed in *Pappas v. Town of Enfield*, "it is a high bar for the plaintiff [to show irrational behavior]: as long as one of the reasons advanced by the zoning board for its decisions is deemed a legitimate rational basis, the plaintiff does not have a viable equal protection claim." 18 F. Supp. 3d at 185 (citing *Harlen Assocs.*, 273 F.3d at 500-01). In particular, "[r]easons for denial need not be based on expert opinions or scientific calculations to be legitimate." *Id*. A decision based on "personal experience and observations of the surrounding community is not arbitrary as a matter of law." *Id.* In sum, "[a]

decision can only be considered arbitrary for federal constitutional purposes where . . . it has no basis in fact." *Id.* (quoting *Harlen Assocs.*, 273 F.3d at 501).

With respect to 29 Liberty Street, Defendants assert that not only has Plaintiff failed to prove the first prong of his "class of one" equal protection claim, but he has also failed to demonstrate that the Town of Chester, and specifically Zoning Enforcement Officer Brown, lacked a rational basis for the decision to issue a cease and desist order after the trailer had been present for more than sixteen months. In their motion papers, Defendants argue that Brown and the Town of Chester had a "legitimate interest in ensuring that the zoning regulations of the Town [were] upheld." Doc. 74-2, at 10. "To that end, they have [and had] an interest in ensuring that mobile homes that do not comply with the zoning regulations are not installed within the Town limits." *Id.* According to Brown's affidavit testimony, the mobile home's extended presence at 29 Liberty Street did not comply with Chester Zoning Regulation § 113B.5. Doc. 74-4 (Ex. B), ¶ 21. After the Komondy trailer had been present at 29 Liberty Street for more than sixteen months – well beyond the customary "six-month" grace period (beyond expiration) allowed by the Town, Brown issued a "Cease & Desist Order" on July 28, 2006. *Id.*, ¶ 19. She then followed the Order with a letter to Mr. and Mrs. Komondy, explaining that "no further extensions of their permit would be granted" and that "Section 113B.5 does not allow for extensions or successive applications for a mobile home permit." *Id.*, ¶¶ 20-21.

Plaintiff disregards the applicability of § 113B.5, and instead concludes that the Defendants "have failed to show a basis for treating the plaintiff differently than the similarly situated property owners of 5 Wig Hill Road, 80 Wig Hill Road and 40 Borkum [sic] Road." Doc. 75, at 6. Plaintiff maintains that the "only basis for any distinction between these individual property owners are statements in an affidavit of . . . Judith Brown." *Id.* Such an argument fails to take into account the

evidentiary nature of a witness's sworn testimony in an affidavit and completely ignores the applicability of § 113B.5 to the trailer at 29 Liberty Street. Plaintiff presents no admissible evidence to suggest that it was not rational, or within Defendants' duties, to apply Zoning Regulation § 113B.5 to 29 Liberty Street.[16]

Subject to constitutional limits, "[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981). Moreover, in Connecticut, pursuant to Conn. Gen. Stat. § 8-12, a "zoning enforcement officer . . . is vested with the power to enforce the city's zoning code." *See e.g., Goulet v. Zoning Bd. of Appeals of Town of Cheshire*, 117 Conn. App. 333, 335 n.1 (2009), *Enfield v. Enfield Shade Tobacco, LLC*, 265 Conn. 376, 378 (2003). "Enforcement of zoning regulations . . . requires the appropriate municipal official to exercise his or her judgment as to whether a violation exists and, if so, what enforcement action, if any, to take." *Lanese v. Baldwin Station, LLC*, No.

---

[16] The Court takes judicial notice that the Town of Chester's stated purposes in enforcing the zoning regulations included, *inter alia*, "promoting the health, safety, morals, and general welfare of the community," "lessening congestion in the streets," "providing adequate light and air," "preventing the overcrowding of land," "avoiding undue concentration of population," and "conserving the value of buildings and encouraging the most appropriate use of land throughout the Town." *See* Chester Zoning Regulations (dated April 1, 2005) § 10A ("Preamble" at "Purposes: General") (as posted online at **http://chesterct.org/?s=zoning+regulations** ) (last accessed 5/25/2017). It is reasonable to conclude that the regulation of mobile homes stemmed from one or more of those intended purposes.

Also, Chester regulated mobile homes under § 113B.5 pursuant to authority conferred upon it by Conn. Gen. Stat. § 7-148. Under that statute, a town is authorized to "[r]egulate and provide for the licensing of parked trailers when located off the public highways, and trailer parks or mobile manufactured home parks, except as otherwise provided by special act and except where there exists a local zoning commission so empowered." Conn. Gen. Stat. § 7-148 (c)(7)(A)(iv).

CV094011308, 2010 WL 1885811, at *2 (Conn. Super. Ct. Apr. 9, 2010).

It thus follows that "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality – whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments – being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." *DeFalco v. Dechance*, 949 F. Supp. 2d 422, 434 (E.D.N.Y. 2013) (citation omitted). *See also, e.g.*, *Bizzarro v. Miranda*, 394 F.3d 82, 88-89 (2d Cir.2005) ("*Olech* does not empower federal courts to review government actions for correctness. Rather, an *Olech*-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency."); *Geinosky v. City of Chicago,* 675 F.3d 743, 747 (7th Cir. 2012) ("Courts have understood that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits."); *Cordi–Allen v. Conlon,* 494 F.3d 245, 252 (1st Cir. 2007) ("The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks. . . . Were the law otherwise, the federal court would be transmogrified into a super-charged version of a local zoning board – a zoning board on steroids, as it were.").

In the case in suit, Plaintiff has presented no evidence to show that Brown, acting in her role as Chester Zoning Enforcement Officer on behalf of the Town, lacked a rational basis to enforce the town zoning regulations. It was Brown's job to determine whether a violation of § 113B.5 had occurred at 29 Liberty Street and then to carry out the necessary enforcement action. As Connecticut courts have recognized, "the enforcement of zoning regulations is a quintessential

36

discretionary governmental function performed solely for the direct benefit of the public . . . " *Lanese,* 2010 WL 1885811, at *2 (citation omitted).[17]

The text of Chester Zoning Regulation § 113B.5 [Doc. 74-2, at 9] explicitly relates to the placement of "a temporary dwelling on premises . . . during construction of [the] owner's permanent dwelling" on that site. That section further dictates that "such mobile home shall not remain upon said premises for more than six months from the time that it is first placed thereon." *Id.* Based on the record presented, all parties agree that the trailer had remained on the property at 29 Liberty Street for sixteen months before Brown issued the "Cease & Desist Order." Doc. 74-4, at 16 (Ex. 4). At that time, ten months had elapsed since the expiration of the Komondys' building permit for a temporary trailer. *Id.,* at 15 (Ex. 3). Four months had elapsed since the end of the informal grace period granted by Chester. Plaintiff presented no facts to suggest that Brown acted in an irrational (abusive, arbitrary) fashion when she took measures to enforce § 113B.5.

"A federal court should not sit as a zoning board of appeals." *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshall, *J.*, dissenting). Otherwise, "every allegedly arbitrary denial

---

[17] Also, as Judge Meyer of this District pointed out when dismissing a "class of one" equal protection zoning enforcement action against a Connecticut municipality:

> The Equal Protection Clause does not require local governments to enforce the law against everyone or against no one at all. . . . For any number of resource reasons, it is neither wholly irrational nor presumptively discriminatory for the government to apply and enforce the law against the ready-and-willing while failing to do so against the irresponsible or recalcitrant. . . . . That is because "[t]he Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir.1985) (Posner, *J.*).

*Gray v. Town of Easton*, 115 F. Supp. 3d 312, 318-19 (D. Conn. 2015), *aff'd sub nom. Gray v. Maquat*, 669 F. App'x 4 (2d Cir. 2016).

by a town or city of a local license or permit would become a federal case, swelling our already overburdened federal court system beyond capacity." *Id. See also Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985); *Conde v. Town of Sharon*, 421 F. App'x 26, 27 (2d Cir. 2011); *Ferris v. Town of Guilford*, No. 3:10-CV-2014 (CSH), 2015 WL 128029, at *6 (D.Conn. Jan. 8, 2015).

Because Defendants presented a rational basis for the zoning enforcement actions at 29 Liberty Street, and Plaintiff has made no showing to the contrary, Defendants are entitled to judgment on Plaintiff's "class of one" Equal Protection claim.[18]  No reasonable jury could conclude that the differential treatment alleged was the product of irrationality or that any of Plaintiff's alleged comparators were sufficiently "similarly situated" for purposes of application and enforcement of the law under the Equal Protection Clause.  *See, e.g.*, *Gray*, 115 F. Supp. 3d at 319.

## B.    Individual Defendants - "Personal Involvement" and Defense of "Qualified Immunity"

In their motion for summary judgment, Defendants emphasize that "[a] complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law."  Doc. 74-2, at 13 (quoting *Rosa R. v. Connelly*, 889 F.3d 435, 437 (2d Cir. 1989)). Individual defendants Gioco and Brown thus assert that even if Plaintiff had been able to provide evidence of similarly situated comparators to establish an "equal protection" violation under § 1983, that claim would still be fatally defective against them because Gioco and Brown were not "personally involved" in the alleged constitutional violation.

_____

[18]    Also, a municipality  "may be held liable under § 1983" only if the plaintiff  can "demonstrate[ ] that the constitutional violation complained of was caused by a municipal 'policy or custom.'" *Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). Plaintiff has made no allegation regarding an unconstitutional policy or custom, but has rather alleged that other properties were not forced to follow the zoning regulation of § 113B.5.

In order to bring a successful § 1983 claim against an individual in his individual capacity, the plaintiff "must show by a preponderance of the evidence that the defendant was personally involved – that is, he directly participated – in the alleged constitutional deprivations." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005). In this context, "direct participation" requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.* (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). *See also Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) ("Under Section 1983, liability can only be imposed against defendants in their individual capacities for 'personal involvement in alleged constitutional deprivations.'") (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)).

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority;" rather he can be held liable if he was personally involved in the deprivation. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks omitted), as there is "no respondeat superior liability in § 1983 cases," *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995).[19] "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Direct participation generally constitutes proximate cause. It thus follows that "[t]o recover

---

[19] *See also, e.g., Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir.1989) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")(quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by the constitutional violation." *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (citing *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir.1993)). *See also  Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986) (A plaintiff must  "allege a  tangible connection between the acts of the defendant and the injuries suffered.").

### 1.    Personal Involvement of Defendants Brown and Gioco

With respect to Defendant Brown, she indisputably made the initial decision to issue the Cease and Desist Order to the Komondys on July 28, 2004.  Defendants assert, however, that the "final and effective decision to impose the Cease and Desist Order was the *de novo* decision by the Zoning Board of Appeals to affirm [that] initial decision by Ms. Brown."  Doc. 74-2, at 14.  In particular, Defendants cite the Connecticut Supreme Court in *Caserta v. Zoning Board of Appeals*, 226 Conn. 80, 82 (1993), holding that when a court reviews the decision of the zoning board of appeals, that court "must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board."  Doc. 74-2, at 14 n.4.  Moreover, " [i]t is clear from both the entire statutory scheme and [Connecticut's] zoning case law that the zoning board hears and decides such an appeal de novo, and that the action of the zoning enforcement officer that is the subject of the appeal is entitled to no special deference by the court." *Id.*, at 15 n.4 (quoting *Caserta*, 226 Conn. at 88-89).

Defendants assert that where a zoning board of appeals performs a de novo review of a cease and desist order by a zoning officer, that zoning officer is no longer the "highest policy-setting official for purposes of granting [or denying] [a property owner's] application for a zoning variance."

Doc. 74-2, at 17 (quoting *Alvarez v. Hansen*, 493 F. Supp. 2d 278, 289-90 (D.Conn. 2007)).[20]

Applying these standards to the case at bar, Defendants summarize, as follows:

> Like the Zoning Enforcement Officer in *Alverez,* [sic], Ms. Brown was neither a member of the Chester Zoning Board of Appeals (voting or non-voting) nor is she the highest policy-setting official for the decision in this case, *i.e.*, to issue a final determination affirming [t]his cease-and-desist order. Further, Mr. Gioco was only one member of the Zoning Board of Appeals, and the latter's decision was upheld by the State of Connecticut Superior Court.

*Id.,* at 18.

In the case at bar, as in *Alvarez v. Hansen*, 493 F. Supp. 2d 278, 287 (D. Conn. 2007), the Plaintiff has failed to produce sufficient evidence to establish that the zoning enforcement officer who made the initial decision to issue a cease and desist order, in this case Brown, was "personally involved in the alleged constitutional deprivation."[21] It is undisputed that, after receiving the Cease and Desist Order from Brown, Marguerite Komondy filed an appeal of the permit denial and an application for a variance from § 113B.5 with the Chester ZBA. The Chester ZBA reviewed and

---

[20] In *Alvarez v. Hansen*, 493 F. Supp. 2d 278 (D. Conn. 2007) Judge Squatrito of this District held that a zoning enforcement officer did not have "personal involvement" in the alleged violation of the Plaintiff's constitutional right to place a sign on his property even though the zoning officer had issued two cease and desist orders to plaintiff and testified in favor of denying his request for a variance before the town's zoning board. The court held that such actions did not effectively prevent plaintiff from obtaining a zoning variance because the "ZBA also accepted materials from various individuals during these proceedings," the zoning enforcement officer was "not a member of the ZBA," and the ZBA was "was the highest policy-setting official for purposes of granting the his [sic] application for a zoning variance." 493 F. Supp. 2d at 290.

[21] Granted, when they made their decisions that the trailer violated § 113B.5, these officials were acting under "color of state law." *See, e.g., Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004) ("According to the Supreme Court, a person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. [S]tate employment is generally sufficient to render the defendant a state actor.") (citations and internal quotation marks omitted).

then denied both applications on December 18, 2006. *Id.,* ¶ 14. At that point, it was no longer Brown, but rather the ZBA that was responsible for the Town's final decision not to extend the mobile home permit or to allow a variance. As in *Alvarez*, the ZBA became the "highest policy-setting official for purposes of granting [the Plaintiff's] application" for a continuation of the mobile home permit. *Alvarez*, 493 F. Supp. 2d at 290.

It is less clear whether the Connecticut state court decisions destroyed Gioco's personal involvement as Chairman of the Chester ZBA . After all, Gioco was the highest official on the town's zoning board and voted on the decision to deny both Komondy's appeal of the permit denial and her request for a variance.

Granted, Marguerite Komondy appealed the Chester ZBA's decision in the Connecticut Superior Court, Judicial District of Middletown, and subsequently in the Connecticut Appellate Court. *Id.*, ¶ 15. *See Komondy v. Zoning Bd. of Appeals of Town of Chester*, Case No. MMX-CV07-4006628-S (Conn. Super. Ct. Jan. 19, 2007); *Komondy v. Zoning Bd. of Appeals of Town of Chester*, 127 Conn. App. 669 (2011). Defendants thus argue that "it was the Connecticut State Courts who made the final decision relative to the Cease and Desist Order which allegedly caused the Plaintiff to be deprived of [his] constitutional right to the Equal Protection of the law." Doc. 74-2, at 18. Neither "Ms. Brown's issuance of a cease and desist order, nor Mr. Gioco's single vote to deny the plaintiff a variance was . . . the operative act which could have caused any constitutional violation because the State Court system had the final determination as to any decision of the Zoning Board of Appeals/Zoning Enforcement Officer." *Id.*

However, Defendants neither provide, nor has the Court found, any precedent in this Circuit holding that members of a municipal zoning board of appeals may disclaim "personal involvement"

in their vote to deny a zoning permit or variance simply because a state court later reviews and upholds the board's decision.[22] In such circumstances, the decision of the ZBA may have been correct (*e.g.*, no sufficient hardship to compel a variance), but that does not mean that the members of the ZBA had no "personal involvement" in making the final decision for the Town.[23] Like the zoning enforcement officer, the zoning board of appeals is an agent of the Town. Moreover, the ZBA is the highest official "actor" to make a zoning decision. Therefore, as to Gioco, the Court finds a lack of authority to hold that he was not personally involved."[24]

Plaintiff responds to the individual defendants's arguments that they "did not have the required personal involvement necessary to impose any liability pursuant to 42 U.S.C. [§] 1983," by simply stating that "Plaintiff disagrees." Doc. 75, at 6. Plaintiff fails to grasp the entirety of Defendants' argument regarding proximate cause of the alleged constitutional deprivation. Instead, he asserts that Defendants "rely upon plaintiff's statement at [his] deposition that he did not speak 'personally' to the individual defendants over the course of the litigation." *Id.* (citing Doc. 74-3, Ex.

---

[22] To so hold would be as if to say that a federal court fired a plaintiff simply because it held that an employer's termination of that employee did not violate Title VII. In such a situation, it is not the court that makes the decision at issue, but rather determines whether the employer's decision to terminate complied with or contravened the law.

[23] In fact, the *Alvarez* court clearly distinguished the zoning enforcement officer's role from that of the ZBA – stating that the officer was "not a member of the ZBA" and had no vote to support a lack of "personal involvement" in the alleged constitutional violation. 493 F. Supp. 2d at 290. In that case, the ZBA's decision was also appealed in Connecticut Superior Court and upheld, but the district court made no mention of the state court's decision when finding no "personal involvement" of the zoning officer.

[24] In fact, the Court takes judicial notice that pursuant to Conn. Gen. Stat. § 8-5a, Chairman Mario Gioco was present at the ZBA's public hearing on the Komondys' applications on December 18, 2006, participated in the subsequent deliberations, and voted on the applications . *See Komondy v. Zoning Bd. of Appeals of Town of Chester*, 127 Conn. App. 669, 672-75 (2011). As expected by his duties, he was a full participant in resolving the Komondy applications.

A (Komondy Depo.), at 63, lines 16-24). Plaintiff counters this alleged reliance with the assertion that "Mr. Komondy testified that he believed speaking to these adverse represented parties would have been improper." *Id.* In so stating, Plaintiff misapprehends the gist of the individual defendants' argument that their decisions were reviewed *de novo* first by the Chester ZBA, then later by the Connecticut State Courts, who affirmed the ZBA's decisions regarding denial of the request for another permit and removal of the mobile home at 29 Liberty Street. Nothing in Defendants' argument addresses any discussions, or lack thereof, with Mr. Komondy.

Absent sufficient evidence of Brown's personal involvement as an individual defendant in the alleged constitutional deprivation, Plaintiff cannot receive an award of damages from her under § 1983. *See*, e.g., *Back.*, 365 F.3d at 122 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted). Summary judgment on Plaintiff's § 1983 claim is proper as to Brown on this alternative basis.

As to Gioco, the Court is not persuaded that he lacked "personal involvement" in the alleged constitutional deprivation based on this record. However, as set forth above, Plaintiff has failed to demonstrate the existence of a constitutional deprivation. Moreover, as set forth *infra*, Gioco has "qualified immunity" with respect to Plaintiff's claim.

### 2. <u>Qualified Immunity</u>

Finally, the individual defendants, Brown and Gioco, assert, as an alternative basis for summary judgment in their favor, that they are entitled to qualified immunity on Plaintiff's § 1983 claim.

The doctrine of qualified immunity protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[25] "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where the conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir.2010) (citations, internal quotation marks, ellipses, and brackets omitted).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated that when determining whether a defendant has qualified immunity, a court must first decide whether the plaintiff has established a violation of a constitutional right. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201. Subsequently, in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court ruled that courts are permitted to exercise their discretion in determining which of the two prongs should be addressed first.

In the case at bar, Defendants assert that Plaintiff has failed to produce admissible evidence

---

[25] "[A] claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself." *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011). Therefore, the defense of qualified immunity is only potentially available to individual defendants sued in their individual capacities, and "not applicable to claims against them in their official capacity." *Id. See also Kuck v. Danaher*, 822 F. Supp. 2d 109, 136 (D. Conn. 2011) ("[T]he doctrine of qualified immunity only protects Defendants as to Plaintiffs' claims for damages against them in their individual capacities.").

that a constitutional right, namely the right to equal protection, was violated. Doc. 74-2, at 30 (citing *Saucier*, 533 U.S. at 201). As set forth *supra,* Defendants allege that there were no similarly situated property owners and the individual Defendants were not, in any event, personally involved in the alleged violations.

If the Court employs the *Pearson* analysis, the lack of a constitutional violation is dispositve – "the defendant is not liable and the court need not proceed further [with its qualified immunity analysis]." *Finch v. City of New York*, 591 F. Supp. 2d 349, 361 (2008). *See also Tyson v. Willauer*, 290 F. Supp. 2d 278, 286 (D.Conn. 2003) ("There being no violation of Plaintiffs' constitutional rights, defendants . . . are entitled to qualified immunity from suit under § 1983 . . . .").[26]

Defendants also argue that not only did Brown and Gioco not act in a manner prohibited by federal law, they took actions that were objectively legally reasonable in light of the legal rules that were clearly established at the time. As to zoning officer Brown, Defendants point to facts in the record to show that she only issued the Cease & Desist Order ten months after Plaintiff's mobile home permits had expired. At that time, the six-month additional grace period had also elapsed and no construction of a new home was evident on the site. According to Defendants, Brown's actions were objectively legally reasonable: "There is no evidence that Ms. Brown believed that issuing a Cease & Desist Order for a property that was not in compliance would be a constitutional violation."

---

[26] Also, a lack of personal involvement weighs in favor of qualified immunity. *See, e.g., Iqbal v. Hasty*, 490 F.3d 143, 153 (2d Cir. 2007) ("Although a lack of personal involvement may be grounds for dismissing a claim on the merits . . . such a lack is also relevant to a defense of qualified immunity because it goes to the question of whether a defendant's actions violated a clearly established right."), *rev'd on other grounds*, 129 S. Ct. 1937 (2009). *See also Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996) ("[T]he [United States] Supreme Court regards a defendant's claim that he 'didn't do it' as within the scope of the qualified immunity defense on the theory that a defendant who did not take the action alleged by the Plaintiff did not violate any clearly established law prohibiting such action.").

Doc. 74-2, at 31. She was simply following the Town's zoning regulations.

As to Defendant Gioco, Defendants assert that his only actions were "voting on appeals of Ms. Brown's decisions, something the [ZBA] is regularly asked to do, and indeed, one of [the board's] official functions." *Id.*, at 31-32. He had no reason to believe that by voting to affirm Brown's adherence to § 133B.5, he was violating the Constitution.

The Court finds that this alternative basis for dismissal of Plaintiff's § 1983 equal protection claim against them in their individual capacities is well founded. Each individual defendant is entitled to qualified immunity with respect to the substance of Plaintiff's equal protection claim. Neither individual defendant had reason to believe that he or she was violating the United States Constitution. *See, e.g., Natale v. Town of Ridgefield*, 927 F.2d 101, 105 (2d Cir. 1991) (Zoning commission president enjoyed "qualified immunity": "because there was ample justification for [his] determination that the [landowners] did not have a right to the permits in question, [so] it was objectively reasonable for [him] to believe that his actions would not deny them of any constitutionally protected rights.").

Plaintiff has failed to demonstrate that his right to equal protection was violated (*i.e.*, that there were "similarly situated" property owners who were treated differently); and Defendants have shown that their actions were objectively legally reasonable in light of the applicable Chester Zoning Regulations (§ 113B.5) at that time. Defendants Brown and Gioco each possess qualified immunity in their individual capacities as to Plaintiff's § 1983 equal protection claim for damages.

## IV. CONCLUSION

For each of the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 74] is hereby GRANTED in its entirety. Pursuant to Federal Rule of Civil Procedure 56(a), there is no

genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law."  Specifically, Plaintiff has failed to demonstrate the existence of a mandatory element in his prima facie "class of one" equal protection claim pursuant to § 1983: the existence of "similarly situated" individuals who were treated differently.  Plaintiff has thus failed to provide facts to show that "(i) no rational person could regard [his]  circumstances . . . to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Ruston*, 610 F.3d at 59 (quoting *Clubside*, 468 F.3d at 159).

Furthermore, Plaintiff's claim likewise fails on the second prong of "class of one" analysis because the decisions  by and on behalf of the Town regarding the Komondys' trailer had *a rational basis.*  Specifically, Brown's issuance of the Cease & Desist Order and Gioco's vote on the Chester ZBA to affirm that decision had the rational basis of enforcing  § 113B.5 of Chester's  Zoning Regulations.  These town regulations were passed pursuant to State authority and reflected legitimate zoning purposes with respect to the placement of mobile homes within town limits.

In addition, Brown, is entitled to summary judgment on alternative grounds.  Namely, as an individual defendant, she lacked sufficient "personal involvement" in the alleged constitutional violation to support Plaintiff's § 1983 claim.  Her decision with respect to the trailer on the Komondy property was ultimately reviewed by the Chester ZBA, as the highest official decision-maker on zoning.  That ZBA decision became the Town's final position – to disallow either a re-issue of the permit or the grant of a variance.

Furthermore, the individual defendants Brown and Gioco  are entitled to "qualified

immunity" in their individual capacities with respect to damages on Plaintiff's § 1983 claims.  As government officials sued in their individual capacity, their actions were not prohibited by federal law and were  objectively legally reasonable in light of the legal rules in force at that time.[27]  *See, e.g., Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010).

In sum, Plaintiff's § 1983 claim, which is premised on the alleged violation of his right to equal protection, fails against both the Town of Chester and the individual defendants due to his lack of proof of the alleged constitutional violation.  He has failed to demonstrate the existence of "similarly situated" property owners; and the decisions by and on behalf of the Town regarding the Komondys' trailer had *a rational basis.*  Also, the individual defendants, Brown and Gioco, have alternative bases for summary judgment.  Brown lacked the requisite "personal involvement" to be held liable for damages on this § 1983 claim.  Moreover, Brown and Gioco each possess qualified immunity in their individual capacities.

The Court therefore GRANTS Defendants' motion for summary judgment [Doc. 74] as to all Defendants.  The Clerk is directed to enter judgment for Defendants in accordance with Federal Rule 58 of Civil Procedure and to close the file.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
    May 25, 2017

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[27]  The Court notes that had Plaintiff been able to  assert a viable claim for "class of one equal protection," his claims against the individual defendants in their *official* capacities for injunctive relief would not be barred by qualified immunity.